**BOWLES, Adm'r, Office of Price Administration, v. KRASNO BROS. GLOVE & MITTEN CO.**

Civil Action No. 1162.

District Court, E. D. Wisconsin.

March 24, 1945.

Thomas E. Fairchild and John J. Burke, both of Milwaukee, Wis. (O.P.A. office), for plaintiff.

Maurice Weinstein, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

Plaintiff brings this action for treble damages under Sec. 205(e) of the Emergency Price Control Act, 50 U.S.C.A. Appendix § 925(e), alleging violations of General Maximum Price Regulation (7 F.R. 3153) in the sale of work gloves after July 31, 1942.

Defendant delivered work gloves to various customers during March, 1942. Some of the orders on which these deliveries were based were received by defendant during the first part of and up to the 17th of March, 1942. The prices charged were

uniform except those sold to Gross and Talcott which were at a higher price. Gross was defendant's agent and customarily received a 5% discount. Talcott was a financial factor. Gross' customers' accounts were factored through Talcott and the accounts were guaranteed.

An officer of the defendant testified that some time in March, the exact date uncertain, he conferred with defendant's sales representative, Gross, in New York and at that time gave him an informal memo showing an increase in prices for defendant's merchandise. Some corroboration of this increase is furnished by an order received from Salkin and Linoff, Inc., of Minneapolis, who on an order blank dated March 31, 1942, ordered two dozen gloves at the increased price. However no deliveries at the increased price were made during March, 1942.

After the price regulation became effective, defendant charged all customers the prices paid by Gross and Talcott during March, 1942, but did not give such customers the benefit of the 5% discount which had been allowed to Gross and Talcott.

The regulation establishes maximum prices as the highest price charged in March, 1942. The applicable provisions of the regulation are as follows:

"Section 1499.1 Prohibition Against Dealing in Commodities or Services Above Maximum Prices.

\* \* \* \* \* \* \*

(a) No person shall sell or deliver any commodity, and no person shall sell or supply any service, at a price higher than the price permitted by this General Maximum Price Regulation; \* \* \*

"Section 1499.2 Maximum Prices for Commodities and Services; General Provisions.

\* \* \* the seller's maximum price for any commodity or service shall be:

(a) The highest price charged by the seller during March 1942:

(1) For the same commodity or service; \* \* \*

"For the purposes of this General Maximum Price Regulation, the highest price charged by a seller during March 1942 shall be:

(a) The highest price which the seller charged for a commodity delivered or service supplied by him during March 1942 to a purchaser of the same class; or

(b) If the seller made no such delivery or supplied no such service during March 1942, his highest offering price for delivery or supply during that month to a purchaser of the same class; or

(c) If the seller made no such delivery or supplied no such service and had no such offering price to a purchaser of the same class, the highest price charged by the seller during March 1942 to a purchaser of a different class, adjusted to reflect the seller's customary differential between the two classes of purchasers: \* \* \*

"Section 1499.20 Definitions and Explanations.

\* \* \* \* \* \* \*

(d) Delivered. A commodity shall be deemed to have been 'delivered' during March 1942, if during such month it was received by the purchaser or by any carrier, including a carrier owned or controlled by the seller, for shipment to the purchaser.

(k) Purchaser of the Same Class. 'Purchaser of the same class' refers to the practice adopted by the seller in setting different prices for commodities or services for sales to different purchasers or kinds of purchasers (for example, manufacturer, wholesaler, jobber, retailer, government agency, public institution, individual consumer) or for purchasers located in different areas or for different quantities or grades or under different conditions of sale."

Plaintiff contends that the actual deliveries during March, 1942, established the maximum prices, that defendant had two classes of customers which ordinarily received a different price, and that defendant could not thereafter sell to a class which regularly received a lower price at the higher price charged to its other customers.

Defendant contends that no violation of the maximum price regulation resulted from charging after April 1, 1942, its highest offering price during March, 1942. Defendant insists that all goods shipped in March, 1942, were on orders taken before the increase in prices was announced, and that the rule expressed in Bowles v. Good Luck Glove Co., D.C., 52 F.Supp. 942, affirmed 7 Cir., 143 F.2d 579, governs the case at bar.

In the Good Luck Glove case the defendant announced about the middle of March, 1942, a new higher price list for its products and circulated such list among

its customers. Its salesmen had stopped giving quotations at the old lower prices in January and February. The only goods sold by it during March, 1942, at its old prices were contracted for several months previously. The court held that sales and deliveries in March, 1942, based on its new higher price list established defendant's maximum price, and not the sales and deliveries during March priced pursuant to contracts entered several months previously.

Assuming that the proof is sufficient to establish that the defendant herein did announce a price increase to its various customers in March, 1942, the lack of the requisite delivery of goods at such increased price during March creates an insuperable barrier to defendant's using such new rate as its maximum ceiling price. Furthermore some of the sales and deliveries during March, 1942, at less than the new higher prices were based on orders received by the defendant during that same month. These facts distinguish the case at bar from that of the Good Luck Glove case. The defendant herein must be held to the prices at which he made deliveries in March, 1942.

Some types of gloves were not delivered to customers other than Gross and Talcott during the critical month of March, 1942. No proof was presented that any increased offering price was made except as was covered in the Salkin and Linoff, Inc., order of March 31. As to these particular items the ceiling price to all other customers than Gross and Talcott will be the prices contained in said order.

As to all other items the defendant has not met the burden of proof that there was any offering price at a higher rate. The proper method of establishing defendant's maximum prices, therefore, as to such items is taking the customary differential between the two classes of purchasers.

The remaining question is whether treble damages should be allowed. Sec. 205(e) (2) of the act provides: " * * * such amount shall be the amount of the overcharge * * * if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. * * *"

Did the defendant prove that its violations were not willful nor the result of failure to take practicable precautions against the occurrence of the violation? The word "willful" means knowingly and deliberately. Zimberg v. United States, 1 Cir., 142 F.2d 132. It does not mean that such violations were with evil intent or purpose, but rather denotes conduct which is intentionally knowing or voluntary as distinguished from accidental. People, on Complaint of Weber, v. Keane, 181 Misc. 592, 47 N.Y.S.2d 347. By enacting the amendment of June 30, 1944, apparently it was the intention of Congress to give the courts some small discretion to allow recovery only of the amount of the overcharge in cases where the violation was accidental. A situation such as here at bar where the defendant acts under a misapprehension as to the correct interpretation of the regulation is not covered by the narrow limits of this power. The wording of the statute places the burden on the defendant to prove not only that the violation was not willful but also that it was not the result of failure to take practicable precautions against the occurrence of the violation. Clearly the defendant in the case at bar did nothing to change its sales practice or avoid what was, as stated hereinbefore, in fact a violation. Therefore, the court has no discretion in the award of damages and must order treble damages.

Plaintiff may have judgment for three times the amount of the overcharges computed as hereinabove indicated.