[Civ. No. 16370.   Second Dist., Div. Three.   Dec. 9, 1948.]

TIGHE E. WOODS, as Housing Expediter, etc., Respondent, v. AGNES CORSEY et al., Appellants.

Hiram T. Kellogg for Appellants.

Abe I. Levy, Stephen D. Monahan, Frank L. Hirst and Benjamin Chapman for Respondent.

SHINN, P. J.—Pursuant to the provisions of section 205e of the Emergency Price Control Act of 1942 (56 Stats. 23 as amended, 50 U.S.C.A. App. § 901 et seq.), the administrator of the Office of Price Administration brought this action against Agnes Corsey, James Hayes and Hazel Slaughter, to recover treble damages for collection of excessive rents in violation of section 4 of that act, and of the rent regulations issued by the administrator in the Los Angeles Defense Rental Area. Agnes Corsey and James Hayes were the oper-

ators of the premises in question; Hazel Slaughter was their manager. Defendants were charged with having received the rent in question for apartments and rooms in the Southway Hotel in the city of Los Angeles. The complaint contained 20 causes of action based upon the collection of specific amounts of rent and an additional cause of action for injunction. Except in minor particulars the court found the allegations of the complaint to be true and that defendants had collected from 13 tenants sums ranging from $44 to $395.50 in excess of lawful rents in the latter part of 1945 and the early part of 1946. Judgment was rendered in favor of plaintiff against each of said defendants in the sum of $4,609.50, and the defendants were further ordered to make refunds to the 13 named tenants of the specific amounts of overcharges found to have been made. An injunction was granted which commanded them to do and not to do certain things in order to comply with the Emergency Price Control Act. The three defendants appeal.

Three points for reversal are stated as follows: 1. The judgment is not sustained by the evidence; 2. The judgment awarding treble damages is not sustained by the evidence for the reason that the evidence does not show an intent to overcharge the tenants; 3. The injunction, by its terms, was impossible of compliance and erroneously granted, because the defendants were no longer in possession of the premises, and the act under which they were charged had expired.

Under their first point appellants concede that there was substantial evidence that four of the tenants were overcharged at the rates stated in the complaint, although they do not concede that the evidence was sufficient to prove overcharges in the total amounts claimed by plaintiff. As to these tenants and all of the others, with one exception, the contention of appellants is that the alleged overcharges consisted only of the collection of rental at the daily allowable rate for the respective quarters occupied by the tenants. Appellants attempted to show that the different units had actually been rented by the day and they testified to this effect. The evidence of plaintiff was to the contrary. It clearly appeared from the testimony of numerous witnesses that they had rented the units occupied by them on a weekly basis, and that defendants had collected and receipted for rent on that basis, frequently collecting in advance. Appellants sought to justify their alleged practice of collecting on a weekly basis at seven times the daily rate under oral authority which they

claimed had been given by someone in the Office of Price Administration to collect rent at the daily rate four or five days in advance. The evidence, however, did not bear out their claim that they acted in good faith under this supposed authorization. It was shown, with reference to at least seven of the units rented, that the amounts collected were fixed arbitrarily and that the sums charged weekly were in each instance either above or below seven times the daily rate.

■ It is not claimed by appellants that the evidence fails to support the findings as to the rates charged and collected from the respective tenants. The contention is, rather, that there was insufficient evidence to prove that appellants collected at the excessive rates for the entire periods of time specified in the complaint and the findings. Appellants have not called to our attention any evidence that the several tenants did not occupy the respective apartments and rooms during all of the specified periods; they claim only that the evidence of the overcharges was incomplete in that it did not specifically establish each rental payment during each period in question. Five only of the tenants testified. Their testimony was specific as to the rentals charged for the periods during which they occupied the several units and paid rent. The evidence with relation to excessive charges and collections from those tenants who did not testify consisted of the testimony of Martha Smith, who for several months acted as manager of the premises and during the remainder of the time as maid; also the testimony of the defendants themselves, entries in books kept by the defendants, and many rental receipts issued by them. Martha Smith testified that she was furnished a schedule of rents to be collected and that she made collections according to the schedule, not only during the time when she was acting as manager, but thereafter on frequent occasions when the manager was away. Her testimony related to nine of the tenants in question, eight of whom were not called as witnesses. The rates charged these tenants were those alleged in the complaint. This witness also testified with a reasonable degree of accuracy to the periods during which the several tenants occupied their respective apartments and rooms. Plaintiff's proof did not go so far as to establish specifically each rental payment, but we are satisfied that it was sufficient to support the findings as to the total amounts charged and collected. There was no uncertainty as to the rates charged the several tenants, nor do we find any insufficiency of proof as to the duration of their

110

several occupancies. The managers, Martha Smith and Hazel Slaughter, who collected rentals, kept records which were examined by defendants Hayes and Corsey when they received the rentals, and the amounts paid over to them were checked against the records. From the evidence as to the rates charged and the periods of occupancy of the several tenants, the court could scarcely have failed to infer that the tenants were charged rent in the total amounts alleged in the complaint. There was some testimony given by appellants to the effect that some of the tenants were usually in arrears and that they were in debt for rent when they vacated the premises. The testimony in this respect was not specific and we deem it to be immaterial.

Manifestly, less detailed proof is required to establish a plaintiff's claim where the defendant has full knowledge of the facts and is in a better position to prove them. (*Bowles* v. *Lentin*, 7 Cir., 151 F.2d 615, 618-19; *Fleming* v. *Harrison*, 8 Cir., 162 F.2d 789, 791-2; *Kleinpeter* v. *Castro*, 11 Cal.App. 83, 87 [103 P. 1090]. See, also, *Perry* v. *Paladini, Inc.*, 89 Cal.App. 275, 281-2 [264 P. 580].) If it be a fact that one or more of the tenants failed to pay the full amount of the overcharges, this would not constitute a defense to an action for the recovery of treble damages for the full amount of the overcharges. The charging of excessive rental is a violation of the act even though the amount be not collected. (*Porter* v. *Crawford & Doherty Foundry Co.*, 9 Cir., 154 F.2d 431; *Duffy* v. *Howell*, 73 Cal.App.2d Supp. 990 [166 P.2d 411]. Cf., *Bowles* v. *Leventhal*, D.C.N.Y., 61 F. Supp. 144, 148; *Beasley* v. *Gottlieb*, 132 N.J.L. 603 [42 A.2d 305].)

The second point of appellants is not well taken. In order to escape liability for treble damages it was incumbent upon them to prove "that the violation of the regulation . . . in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation." (56 Stats. 33 as amended, 50 U.S.C.A. App. § 925(e); *Bowles* v. *Hasting*, 5 Cir., 146 F.2d 94; *Bowles* v. *Miller*, 247 Wis. 139 [19 N.W.2d 285].) Appellants failed to establish this defense. It was clearly shown that they had no intention of renting units at the allowable weekly rates, and there was ample evidence that in numerous instances their charges were fixed arbitrarily and without reference to the allowable daily rates. They rented rooms and apartments by the week without any understanding with, or knowledge on the part

of, their several tenants that the latter were being charged at daily rates. There was no evidence whatever of mistake or inadvertence, and no claim is made that appellants did not have complete information at all times as to the weekly rates which they could lawfully charge. It has been frequently held that a "wilful" violation, within the meaning of the price control act, is one which is intentional, knowing, voluntary, deliberate, or obstinate, although it may be neither malevolent nor with a purpose to violate the law. (*Zimberg* v. *United States,* 1 Cir., 142 F.2d 132, 137-8; *Bowles* v. *Weitz,* D.C.Pa., 64 F.Supp. 829, 833; *Bowles* v. *Krasno Bros. Glove & Mitten Co.,* D.C.Wis., 59 F.Supp. 581; *Bowles* v. *Arcade Inv. Co.,* D.C.Minn., 64 F.Supp. 577.) There was ample evidence that appellants' actions were wilful, and the court was therefore justified in awarding treble damages.

Appellants were restrained by the judgment from "demanding or receiving rents at the Southway Hotel, or any other housing accommodations under the management or control of said defendants, in excess of the maximum rents permitted by said Rent Regulation for Hotels and Rooming Houses and Rent Regulation for Housing, as heretofore or hereafter amended, extended, or adopted, pursuant to the Emergency Price Control Act of 1942, as heretofore or hereafter amended or extended," and were ordered to keep signs posted stating the maximum rents for the various units. They were further directed to give receipts for the rents collected; to file with the administrator a statement of the maximum rent charged for one of the rooms in the hotel, and generally to comply with the applicable regulations respecting the operation of hotels and rooming houses which might be under their control.

In respect to appellants' third contention, the following statement, unaccompanied by citation of authority or statutory reference, appears in their brief: "The injunction should have been denied in any event for the reason that the Act under which authority was given for the issuance of an injunction had expired and the new Act of Congress thereafter enacted and in force at the time of the trial of this action, could not be given retroactive effect to compel the appellants to comply with it." In considering this argument, it is necessary to keep in mind that the violations charged to defendants occurred prior to March 21, 1946 (the date upon which the action was commenced); that the trial took place on April 10, 1947; and that judgment was entered on July 15, 1947.

By the provisions of section 205(a) of the Emergency Price Control Act of 1942 (56 Stats. 33 as amended, 50 U.S.C.A. App. § 925(a)), authority was conferred upon the price administrator to seek injunctive relief whenever "any person has engaged or is about to engage" in violations of the act. Although on June 30, 1946, the act expired by its own terms (§ 1(b) as amended June 30, 1945, 59 Stats. 306), it contained an express provision that "as to offenses committed, or rights and liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense." (§ 1(b), 50 U.S.C.A.App. § 901(b).) On July 25, 1946, the Price Control Extension Act of 1946 (60 Stats. 664) became law, reviving the price control act of 1942, amending it in certain particulars immaterial here, and extending its effective period to June 30, 1947. This extension act continued in effect the above-quoted "saving-clause" provision of section 1(b), geared, however, to take effect subsequent to the newly fixed expiration date of June 30, 1947. In recognition of the regulatory hiatus of some 25 days between the expiration of the 1942 act and its revival, it was further provided that "all regulations, orders, price schedules, and requirements under the Emergency Price Control Act of 1942, as amended . . . which were in effect on June 30, 1946, shall be in effect in the same manner and to the same extent as if this Act had been enacted on June 30, 1946. . . ." (U. S. Code Cong. Serv. (1946), § 18, p. 645.) It was manifestly the intention of the Congress that, except as specifically amended, the previously existing price and rent control legislation, together with the administrative regulations promulgated thereunder, should be revived and continued in effect for the prescribed period, and that rights and liabilities incurred under the 1942 act prior to June 30, 1946, were to be determined by action under the provisions of that act just as if it had not terminated. At the time of the trial, as well as when judgment was entered, therefore, the provisions of the 1942 act were, as to the defendants, in full force and effect, and accordingly, the authority of the administrator to seek and obtain the full scope of relief available to him under those provisions must be sustained. (See *Gordon* v. *Porter*, 9 Cir., 156 F.2d 799; *Porter* v. *Villari*, 3 Cir., 156

F.2d 690. Cf., *150 East 47th St. Corp.* v. *Porter*, E.C.A., 156 F.2d 541, 544.)

    ■ It may be conceded that prior to the date of entry of the decree, the provisions of the Emergency Price Control Act of 1942, as amended and extended, had terminated; but federal rent control was nevertheless continued subsequent to June 30, 1947, under the provisions of the Housing and Rent Act of 1947 (61 Stats. 193, 50 U.S.C.A.App. § 1881 et seq.), as extended further by the Housing and Rent Act of 1948 (62 Stats. ch. 161, U. S. Code Cong. Serv. (1948), No. 4, p. 722). We note, moreover, that the Housing and Rent Act of 1947 expressly continued in effect the defense-rental areas, and (with some exceptions) the maximum rental figures for controlled housing accommodations, as established under the authority of the Emergency Price Control Act of 1942. (61 Stats. 196, 197, §§ 202(d), 204(b), 50 U.S.C.A. App. §§ 1892(d), 1894(b).) In determining the necessity and scope for injunctive relief, and in molding the decree to the facts of the case so as to effectuate the broad public purposes of rent control legislation, the court was entitled, in the exercise of its sound judicial discretion, to restrain acts of the same type or class as those unlawful acts which it found had been committed, and whose commission in the future, unless enjoined, would be clearly violative of the public interest as expressed in the applicable legislation. (See *Hecht Co.* v. *Bowles*, 321 U.S. 321, 329-31 [64 S.Ct. 587, 88 L.Ed. 754] ; *Bowles* v. *Montgomery Ward & Co. Inc.*, 7 Cir., 143 F.2d 38, 42-3 ; *Shadid* v. *Fleming*, 10 Cir., 160 F.2d 752.) The injunction as granted appears to be reasonably adapted to effectuate the policy and purpose of rent control in the future management, by defendants, of their property, and cannot be said to be an abuse of discretion. Appellants nowhere contend, nor do they point out to us any particulars in which it is claimed, that the terms of the decree have been rendered inapplicable or unjust as to them by reason of the legislative changes to which we have referred, or by any administrative regulations or orders promulgated thereunder, and we find no occasion for a modification upon this appeal. ■ In any event, since the decree is a continuing one of a preventive nature, it is, under familiar equitable principles, always subject to modification upon application to the trial court if its continued enforcement in the future in its present form would effect an injustice. (*Sontag Chain Stores Co.* v. *Superior*

*Court,* 18 Cal.2d 92 [113 P.2d 689]; anno. 136 A.L.R. 765, 68 A.L.R. 1180.)

■ As a further argument under their third point, appellants assert, without transcript reference, that their lease on the Southway Hotel had expired prior to the trial, and from our own examination of the record, we find evidence to that effect. Appellants maintain that it was unnecessary and inappropriate for the court to undertake to regulate their conduct with reference to a property which they no longer operate. We cannot agree. The decree properly covered other properties which appellants might own (see *Bowles* v. *Howell Realty Co.,* D.C.Del., 59 F.Supp. 921; *Bowles* v. *Montgomery Ward & Co., supra),* and they are in no respect harmed by the breadth of the restraint imposed upon them. Indeed, the decree is in such form that if reference to the Southway Hotel should be deleted the injunction in several respects would be inoperative if appellants at some future time should resume the management of that property.

■ A further contention found in the briefs of appellants that their motion for a mistrial should have been granted because plaintiff offered to prove that defendants had been convicted of the criminal charge of violating the Emergency Price Control Act is without merit.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.