554

## MERCADO v. BRANNAN, Secretary of Agriculture.

### No. 4386.

United States Court of Appeals First Circuit.

March 25, 1949.

Abrahan Diaz Gonzalez, of Santurce, Puerto Rico (Pedro M. Porrata, Charles Cuprill, and Benjamin Ortiz, all of Ponce, Puerto Rico, on the brief), for appellant.

Lewis A. Sigler, Ass't Associate Solicitor, U. S. Department of Agriculture, of Washington, D. C. (Neil Brooks, Associate Sol., U. S. Department of Agriculture, and John M. Durbin, Atty., U. S. Department of Agriculture, both of Washington, D. C., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and CLARK[1] and W O O D B U R Y, Circuit Judges.

CLARK, Circuit Judge.

This is the second appearance before us of this action for treble damages, under § 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e), for the sale of cane blackstrap molasses at an overceiling price. The facts are stated in our earlier opinion, Anderson v. Mercado, 1 Cir., 163 F.2d 303, certiorari denied Mercado v. Anderson, 332 U.S. 837, 68 S.Ct. 220, remanding the case to the district

---

[1] Judge CLARK of the Second Circuit, serving by designation.

court for reconsideration of its award of damages. In our view of the case there had been a substantially greater delivery of the product in violation of the law than the district court had originally found, Porter v. Mercado, D.C.P.R., 67 F.Supp. 107, and reconsideration of its refusal to assess penalties beyond the overcharge itself was necessary because it had failed to take note of certain further factors we held to be relevant. Upon the new trial the court necessarily accepted our conclusion as to the overcharge itself and therefore increased it to the sum of $42,501.36. Then after further evidence the court found that defendant-appellant had not established its partial defense under § 205(e), namely, that its overcharge was not willful or the result of failure to take practicable precautions against the occurrence of the violation. Accordingly the court, in the exercise of its statutory discretion to assess a penalty not less than the amount of the overcharge or more than three times that amount, Bowles v. Krodel, 7 Cir., 149 F. 2d 398, fixed defendant's liability at one and one-half times that amount, or at an additional sum beyond the overcharge itself of $21,250.68. From the resulting judgment defendant has taken this appeal.

Willfulness in violating a regulatory statute implies not so much malevolent design as action with knowledge that one's acts are proscribed or with careless disregard for their lawfulness or unlawfulness. Zimberg v. United States, 1 Cir., 142 F.2d 132, 137, 138, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573. As is of course well known, the Office of Price Administration and its successors have not only conducted vast operations, but have also provided extensive informational services for the benefit of those subject to regulation. In view of this, the contention that an honest and reasonable belief in the validity of all acts done pursuant to an earlier contract is sufficient to support a defense of lack of willfulness, without proof of attempted verification of such a belief from the appropriate governmental officers, presents a problem.[2] Compare, for example, Bowles v. Krasno Bros. Glove & Mitten Co., D.C.E.D.Wis., 59 F.Supp. 581, 583, and Bowles v. Arcade Inv. Co., D.C.Minn., 64 F.Supp. 577, with Bowles v. Pechersky, D.C.W.D.Pa., 64 F.Supp. 641.

We need not decide this issue, however, since defendant was clearly unable to establish the defense that it had taken practicable precautions to avoid the violation. Bowles v. Pechersky, supra. It learned of Amendment 32 to Revised Maximum Price Regulation 183, providing a maximum price of 13.6¢ a gallon "delivered at the mill," before it had made any of the deliveries in issue. Nevertheless it made no attempt to obtain an official interpretation of the amendment, but relied entirely on its own view of the law. This was incorrect, as the district court ruled at the first trial, 67 F.Supp. 107; and we agreed, 163 F.2d 303, 308. In fact, defendant took no precautions of any kind, beyond its blind reliance upon a pre-existing contract, to make sure that it had complied with these new, definite, and complete regulations affecting its business. It was not reasonable for it thus to assume that entering into a contract for the future would make it thereafter immune from changes in established maximum prices. This is particularly so, since the Act itself provides otherwise. § 4(a), 50 U.S.C.A.Appendix, § 904(a), making it unlawful to sell or deliver any commodity in violation of a price regulation, "regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into."

The court below made explicit findings of fact, followed by equally explicit conclu-

---

[2] Here defendant's representatives had visited the local Office of Price Administration to inquire about the ceiling price of molasses before the contract of sale was entered into, but they did not exhibit the contract. The crucial question, however, as our earlier opinion shows, was as to the deliveries made under the contract with relation to the later enacted regulations. Defendant's representatives made no subsequent visits or inquiries until an OPA investigator approached them after the deliveries had been completed. Defendant's general awareness of the price regulation program was shown by its attempt, though unsuccessful, to contract out of any possible liability under the Act and regulations in not merely this contract, but also other earlier contracts.

sions of law, against defendant on each of these defenses. Other than that it placed first its holding as to the defense we have considered, there is no indication that it rated one defense as more important than the other or that it exercised its discretion in fixing the penalty because of the double-barreled nature of its holding. On the contrary, its restraint in settling the assessment, fixing this as it did at only one-quarter of the amount authorized under the statute, shows that it gave all the consideration permissible to defendant's claim of honesty of purpose in disregarding the new regulations. A discretion so moderately exercised cannot be found to have been abused.

■ Defendant also argues that any recovery here, either for the overcharge or for additional penalties, is prevented by § 205(d) of the Act, 50 U.S.C.A.Appendix, § 925(d), barring awards for acts done in good faith pursuant to any provision of the Act or any regulation or "agreement thereunder," even though thereafter changed or found invalid.[3] But we have already answered that contention in our former opinion, 163 F.2d 303, 310, where we pointed out that the deliveries made by defendant were not in compliance with a regulation, but in violation of one. True, we did suggest, 163 F.2d 303, 309, that the original contract may itself have been illegal, as in excess of charges made by defendant during the base period; and this point has now been removed from the case by the finding of the district court that defendant "did not grant rebates or quantity discounts" during the base period. The effect of this finding is to establish the legality of the contract when originally made, since it means that the contract price of 17¢ a gallon was then the correct one for purchasers for consumption, even though they purchased in such large amounts as were here involved. But this does not reach our conclusion that a delivery illegal under the regulations in force at the time it is made is not thereby validated under § 205(d) merely by reason of the fact that it is in fulfillment of a contract of sale valid when made.

■ Defendant vigorously asserts, however, that the statutory phrase "agreement thereunder" refers to just such a contract as the one before us. But we agree with the plaintiff that, as the context clearly requires, the phrase means an agreement under the terms of the Act, i.e., not a private contract, but an agreement in the same class with a regulation or price order of the Administrator. Thus it refers to a pricing agreement which the Administrator was authorized to make with industry or other groups under § 5 of the Act, 50 U.S.C.A. Appendix, § 905. There was obviously no intent upon the part of the legislative body to nullify the provisions of § 4(a), supra, making unlawful sales or deliveries in violation of a price regulation, though made to fulfill a prior contract. Foster & Co. v. Bowles, Em.App., 144 F.2d 870, 874; Bowles v. Franceschini, 1 Cir., 145 F.2d 510, 513.

The judgment of the District Court is affirmed.

---

[3] "No person shall be held liable for damages or penalties in any Federal, State, or Territorial court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this Act or any regulation, order, price schedule, requirement, or agreement thereunder, or under any price schedule of the Administrator of the Office of Price Administration or of the Administrator of the Office of Price Administration and Civilian Supply, notwithstanding that subsequently such provision, regulation, order, price schedule, requirement, or agreement may be modified, rescinded, or determined to be invalid." 50 U.S.C.A. Appendix, § 925(d).