[Civ. No. 24378.    Second Dist., Div. One.    July 11, 1960.]

JESSE C. LITTLE, Respondent, v. WILLIAM S. SCHWARTZ, Appellant.

Gerald M. Persion for Appellant.

Taylor & Pfleger and Milton A. Taylor for Respondent.

LILLIE, J.—On December 5, 1949, a judgment in favor of plaintiff Little and against defendants Schwartz and Kellogg was entered in a quiet title action decreeing plaintiff to be the owner of a certain right of way passing over lands owned by defendants, and enjoining the latter from maintaining a lock on the gates thereto or interfering with plaintiff's free use of the same. Ten years later on May 20, 1959, defendant Schwartz moved the lower court to modify the injunctive portion of the judgment to permit him to lock the gates to the driveway on the basis of a change of circumstances which has resulted in considerable damage to his property over which the right of way passes; he does not seek to in any way interfere with plaintiff's use of the road and is willing to install any kind of lock or dial satisfactory to plaintiff and provide him and those lawfully coming onto plaintiff's property with keys thereto. The minute order is silent concerning the lower court's reason for denying the motion, but the record clearly shows the ground of denial to be a lack of power to modify the injunctive order. It was conceded by the trial judge that the evidence supported a sufficient change of circumstances to justify a modification of the order if the modification could lawfully be effected.

Plaintiff neither appeared at the hearing nor offered evidence in opposition to the motion, although his counsel was present. Defendant Schwartz' rather lengthy evidence disclosed that since 1949 considerable damage had been done to his premises due to the open gates and resulting easy access to the driveway leading over his property to that of plaintiff. The record shows the original complaint was filed in 1948; it asked the court to quiet title in plaintiff to the right of way and enjoin defendants from interfering with his use of the

same. It constitutes a strip of land approximately one mile long used by plaintiff as a driveway over and across defendants' land as a means of ingress and egress to plaintiff's property. Gates are maintained at the entrance and end of the road. The entrance is located on defendant Schwartz' premises, the latter consisting of approximately 900 acres of improved ranch land valued at approximately $100,000, upon which, before the war, he raised turkeys, in the last 10 years sheep, and presently cattle. The driveway leads to plaintiff's property which consists of approximately 60 acres of unimproved land on which are located no buildings, was purchased by him solely as an investment and is singularly devoted to the grazing of cattle.

The trial court in the main proceeding found that plaintiff's immediate predecessor in interest and plaintiff had been the owners by adverse possession of the strip of land constituting the right of way since October, 1938; and that in early 1944 defendant Schwartz had placed a lock on the entrance gate thereto preventing plaintiff's use of the same as a driveway. Pursuant thereto, the judgment in question was entered December 5, 1949, decreeing plaintiff to be the owner of certain lands, together with the right of way in question; and enjoining and restraining defendants "from maintaining a lock or locks on said entrance gate or entrance way, or from preventing the plaintiff from using or enjoying said right of way or from in any manner interfering therewith or the free use thereof by the plaintiff, and the title to said right of way is hereby quieted in the plaintiff as the owner of said land and as appurtenant thereto."

Although showing no physical change in the right of way itself or to plaintiff's land, the evidence on the motion to modify discloses a change in the last 10 years relative to the nature of the locality surrounding defendant's ranch, the number and kind of people now living in and around and traversing the immediate area and the effect of their activities on defendant's property, and the use to which his ranch is now devoted. In 1949 "just a very few people" who owned ranches lived in the district, approximately a mile or two apart, and they, ranch owners themselves, did not trespass, hunt or dump garbage or junk on other ranch property; in addition, defendant used the ranch for week-end visits. During the war defendant raised turkeys on the premises and, during the last 10 years, sheep. Today, over 300 people are residents in subdivisions developed in the immediate vicinity

of defendant's ranch, the closest within 50 feet of his boundary line; they are not ranchers but engaged in employment in town. With the growth in population in the area of defendant's ranch and the easy access to his property through the open driveway, the public has trespassed on defendant's land, dumped thereon rubbish, garbage, junk and building materials from construction activities in the area, hunted all over the ranch destroying property and improvements and creating a fire hazard, and left the gates open permitting defendant's cattle to wander away from the premises. The unlocked gates have been pulled open and the driveway has been used as a public road. Once on the property trespassers have torn down fences, destroyed windows and doors in buildings, torn out plumbing fixtures and destroyed a water heater; used the premises as a dump for depositing rubbish, etc., and a hunting ground for rabbits, dove and quail, tramping over the ranch; left the gates open causing cattle loss; stolen valuable property including a water tank; stripped wire off of fence posts in the interior; damaged the entrance; and dumped metal and junk on the premises, which when eaten by defendant's cattle have caused sickness and death.

Defendant repeatedly testified that his only desire is to maintain a lock on the entrance and exit gates (which have always been in existence) to protect his property from further damage by the public; he in no manner wishes to prevent or interfere with plaintiff's use of the driveway, and is willing, if allowed to lock the gates, to provide plaintiff with any type of lock or dial he wishes, and keys or any other means of opening the gates.

Our main concern is whether the lower court has the power to modify or change the kind of permanent preventive injunctive order incorporated in the instant quiet title judgment. Respondent has neither appeared in this appeal nor filed a brief; appellant's position is predicated on the theory that any kind of permanent preventive injunction may be modified upon an adequate showing of a change of circumstances.

We are familiar with the rule laid down by the authorities cited by appellant—that the trial court has the inherent power to modify a permanent preventive injunction upon a showing that ''there has been a change in the controlling facts upon which the injunction rested, or the law has been changed, modified or extended, or where the ends of justice would be served by modification'' (*Sontag Chain Stores Co.* v. *Superior Court*, 18 Cal.2d 92, 95 [113 P.2d 689]) ; and

"(W)hen the decree is continuing in nature, directed at future events, it must be subject to adaptation as events may shape the need" (*Union Interchange, Inc.* v. *Savage,* 52 Cal.2d 601, 604 [342 P.2d 249]).

Although recognizing that "it is the long established policy of the law to . . . accord finality to judgments" (p. 94), the Supreme Court in 1941 in *Sontag Chain Stores Co.* v. *Superior Court, supra,* held that in the case of a permanent preventive injunction the decree "is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree," the court continued, "it has uniformly been held, is always subject, upon a proper showing, to modification or dissolution by the court which rendered it. The court's power in this respect is an inherent one. Its action is determined by the facts and circumstances of each particular case, with a view to administering justice between the litigants, and it has the power to modify or vacate its decree when the ends of justice will be thereby served" (pp. 94-95). The court there was concerned with a permanent injunction against peaceful picketing to obtain a closed shop, and the change of circumstances urged consisted of a subsequent Supreme Court decision declaring such picketing lawful. Although the court at that time referred to "a preventive injunction of the type here under review" (p. 94), we do not deem it a limitation to the subject matter there involved, but to the continuing nature of the order; however, the rule of the Sontag case has since been extended to other than labor cases and situations other than those created by a change in the law. The court in *Bautista* v. *Jones,* 25 Cal.2d 746 [155 P.2d 343], applied the rule of modification where "the relationship of the parties is altered in such a manner as to justify" the same (p. 754); and *Woods* v. *Corsey,* 89 Cal.App.2d 105 [200 P.2d 208], and *Union Interchange, Inc.* v. *Savage,* 52 Cal.2d 601 [342 P.2d 249] (the Supreme Court's latest pronouncement on the subject) both involving nonunion matters, followed the rule of *Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92 [113 P.2d 689]. There appears to be no limit to the subject matter covered by a permanent preventive injunction of the type contemplated in the Sontag case, which the courts will modify upon a proper showing.

If this was the extent of the considerations involved in the matter before us, the rule of modification could well be applied to best serve the ends of justice and prevent further

damage to defendant's land. But we are faced with a permanent preventive injunction coupled with a quiet title decree, on its face of a type different than those involved in the above-cited authorities which the trial court has the inherent power to change or modify. The judgment, of which the instant injunction is part, is one quieting title to property—a right of way consisting of a strip of land a mile long used as a road. The quiet title portion of this decree once and for all settled between plaintiff and defendant the title to this piece of land and judicially created in plaintiff the right to its use—is final and not subject to change or modification. The standard judgment in the ordinary quiet title action generally includes, as almost an inseparable part thereof, a prohibition against the defendant subsequently asserting a claim adverse to the title of the plaintiff. Such a decree is final and conclusive, and so should it be, for otherwise the future security and safety of land titles based upon quiet title judgments would be endangered, creating no end of legal confusion in the ownership of real property. However, the judgment at bar appears to differ from the normal quiet title judgment in that therein the trial court introduced as a part thereof an additional element of restraint—a prohibition against maintaining a lock on the gates of the driveway, which gates have always been used, based upon a circumstance then existing—defendant Schwartz had locked the gates preventing plaintiff's use of the road. No California case has been found, or cited by counsel, which touches the precise point here under discussion. Thus, whether the injunctive portion preventing the maintenance of locks on the gates is such an integral part of the quiet title judgment as to give it the finality that will prevent modification of the order depends upon the interpretation of the judgment as a whole.

Concededly, the right of way has not physically changed, nor has the plaintiff's premises; gates have always been maintained across the right of way entrance; the restraint preventing defendant from locking them was neither necessary to the judgment quieting title nor essential to the creation of plaintiff's title to the right of way, and created no right in plaintiff; but it did tend to make plaintiff's use of the driveway easier and protect his right of use against interference from the defendant. Actually, no mention of a lock on the gates would not, one way or another, have affected the plaintiff's title to the right of way or his right to use the same, inasmuch as defendants, under the judgment, were also re-

strained from preventing or interfering with plaintiff's use or enjoyment thereof. Thus, in addition to the order prohibiting defendant from interfering with plaintiff's use of the driveway, the court restrained him, not from maintaining gates, but from locking the same. No doubt at that time it was contemplated by all, including the court, that because of the nature of the premises, maintenance of gates was proper; but because of defendant's conduct in early 1944 placing a lock on the entrance gate forbidding plaintiff the use of said driveway, maintenance of a lock thereon was not proper. The plaintiff's title to the strip of land had fully accrued in plaintiff and his predecessor long before 1948, as did his right to use the same; this cannot be modified—the facts clearly established this and are "so nearly permanent as to be substantially impervious to change" (*Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92, 95 [113 P.2d 689]); but the restraint upon defendant locking the gates became necessary only because, in early 1944, defendant placed a lock on the entrance gate and ". . . forbade the *plaintiff* to use" the driveway. Thus, in restraining defendant from maintaining the lock it was obviously the trial court's intention not to thereby create a right in plaintiff, which the judgment had already established, but to facilitate his use of that right and protect it against defendant's further interference, and to prevent defendant from debarring plaintiff's, not the public's, use of the road. As such it did not constitute the injunctive order an integral or inseparable part of the judgment. Under the circumstances, it seems neither just nor equitable to permit continuing substantial damage to a valuable acreage by giving the restraining order the strict construction demanded by the major part of the final decree; for it is not to prevent or interfere with plaintiff's free use of the driveway that defendant now seeks, but to prevent the use of the same by the uninvited public which has no right to go upon the premises, at the same time protecting plaintiff's right thereto and continued use thereof by maintaining any kind of lock plaintiff wishes to specify and providing him and those lawfully coming onto his property with keys or means of access. We have before us on the one hand—due to an open driveway, extensive damage done and threatened to 900 acres of valuable improved ranch land and cattle grazing thereon, as compared with a minimum of use of the roadway by plaintiff, who seldom goes on the premises, and those lawfully coming onto his property of 60 acres of unimproved land purchased by plaintiff purely as an

investment and which he has attempted to sell to defendant. Inasmuch as plaintiff's use and enjoyment of the right of way will in no manner be interfered with; title thereto heretofore quieted in plaintiff will in no way be diminished or affected; defendant does not claim title or right adverse to plaintiff; and a lock, which will readily admit plaintiff and those lawfully using the road to his property, will be maintained for the sole purpose of keeping out trespassers, we believe, under the circumstances, and in view of the purpose for which the restraint was originally provided, that the injunctive portion of the judgment relating solely to the maintenance of the locks is subject to modification to serve the ends of justice; and that the court has power to change or amend the same.

The record shows without question a "change in the controlling facts upon which the injunction rested." (*Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92, 95 [113 P.2d 689]). At the time the original judgment was entered in 1949, there were few persons in the locality—those who lived there were also ranch owners, cognizant of the problem arising out of trespassing—there was no particular difficulty with keeping the public off of the premises; and the ranch was then used for sheep raising, which is an activity differing substantially from the raising of cattle.

The trial court, in denying defendant's motion, referred to *O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10]. Although of interest in its discussion of various rules applicable to the right of a servient owner to maintain gates across an easement acquired by prescription, the case actually involved not a modification of a restraining order, but a construction of the injunctive portion of the judgment declaring plaintiffs to be the owners of easements for roads across defendants' land, acquired by prescription. The restraint in question debarred defendants from obstructing them. On a direct appeal from the judgment an issue was raised concerning whether the injunction was too broad and whether defendants should be permitted under the same to erect gates across the roads. Inasmuch as the issue was not timely raised, the question was not determined by the court, but it did suggest that any future interpretation allowing defendants to maintain and construct gates across the easements should be made in the light of the use for which the easement was acquired by plaintiffs, and the right of defendants to maintain a reasonable use of their land subject thereto.

In the case at bar, we are not concerned with an interpretation of the preventive injunction to determine what defendant can do thereunder as it now stands, for it is obvious from its clear language that he cannot lock the gates, and it is not claimed otherwise; of concern, conceding such obvious interpretation of the restraint, is whether the same may be modified on a subsequent showing of changed circumstances. This is not the O'Banion case.

For the foregoing reasons the order is reversed.

Wood, P. J., and Fourt, J., concurred.