**The BOWDIL COMPANY, Appellant,**

v.

**CENTRAL MINE EQUIPMENT COMPANY, Appellee.**

**No. 15076.**

United States Court of Appeals, Eighth Circuit.

Oct. 28, 1954.

Rehearing Denied Nov. 30, 1954.

Bruce B. Krost, Cleveland, Ohio, Thompson, Mitchell, Thompson & Douglas, John O. Hichew, St. Louis, Mo., and Woodling & Krost, Cleveland, Ohio, were with him on the brief, for appellant.

John H. Sutherland, St. Louis, Mo., Philip B. Polster, Collinsville, Ill., was with him on the brief, for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order entered September 30, 1953, modifying a decree entered December 5, 1942, which restrained the appellee from competing unfairly with the appellant and from infringing its trade-mark rights.

The Bowdil Company, of Canton, Ohio, a manufacturer of mining machines having cutting chains with replaceable bits, brought this action in 1939 against the Central Mine Equipment Company, of St. Louis, Missouri, charging it with patent infringement, trade-mark infringement, and unfair competition. The is-

sues raised were whether the manufacture and sale by the defendant (appellee) of cutting bits for use in the mining machine made and sold by the plaintiff (appellant) infringed the plaintiff's patent rights and trade-mark rights and constituted unfair competition.

The case was tried in June, 1941. The District Court decided that the cutting bit shown in United States Letters Patent No. 1,677,950, owned by the plaintiff, was not covered by the claims of the patent, and that the defendant was not a contributory infringer of the patent. The court, however, concluded that the cutting bits made and sold by the defendant infringed the plaintiff's trade-marks and were deceptively similar to the bits made and sold by the plaintiff for use in its machine, and that its bits had acquired a secondary meaning.

The District Court found:

"16. The defendant, since December, 1937, has manufactured and sold, in competition with the plaintiff, cutting bits having the same general appearance as the cutting bits of the plaintiff and have appropriated the plaintiff's secondary meaning attached to said cutting bits, and has, since December, 1937, manufactured and sold cutting bits which are a slavish copy of the cutting bits which the public has come to accept as 'Bowdil' bits, that is, bits manufactured and sold by the plaintiff, and has unfairly competed with the plaintiff in the sale of said bits in the trade. The purchasers and users of said bits were and are likely to be deceived and confused by the similarity in appearance of the defendant's bits with the plaintiff's bits. Moreover, there have occurred cases of actual deception of, and confusion by, users of the bits in that they believed that they were using plaintiff's bits when in fact they were using defendant's bits. The said acts of the defendant constitute a case of blatant unfair competition causing actual deception of the public and confusion in the trade and likely to cause, and probably will cause, deception of the public and confusion in the trade. It is not demonstrated that the bit in its entirety had to be copied upon the unaccepted theory advanced by the defendant that every feature thereof is a mechanical or functional one. The defendant made no effort to distinguish its bits from those of the plaintiff even though it expressly made and sold the bits for use in the plaintiff's mining machine chain which made the likelihood of confusion more probable. The plaintiff has been injured and damaged by the defendant's said acts of unfair competition and will be further injured and damaged thereby unless said acts are enjoined."

The court also found that the defendant had infringed the plaintiff's trade-marks covering cutting bits with longitudinal side bands.

Based upon its findings and conclusions, the court on December 5, 1942, entered its decree adjudging: (1) that the plaintiff was the owner of Letters Patent No. 1,677,950, issued July 24, 1928; that the defendant had not infringed the patent; and that plaintiff's claim for patent infringement was dismissed; (2) that "the general appearance of plaintiff's cutting bits, as exemplified by figures 1, 2 and 3 in the drawing of said Letters Patent No. 1,677,950, * * * have acquired a secondary meaning in the trade as indicating to purchasers the origin of the bits to be that of the plaintiff"; and that the plaintiff is the exclusive owner of the secondary meaning and "of all the rights at law and in equity accruing thereto; and (3) that the trade-marks illustrated in United States Registration Certificates No. 333,322 and No. 338,952, and attached to plaintiff's cutting bits, are valid trade-marks; that the plaintiff owns them and "all rights at law and equity accruing thereto"; and that defendant had infringed plaintiff's trade-mark rights and had engaged in unfair competition with plaintiff.

Paragraph 10 of the decree reads as follows:

"10. That a perpetual injunction issue out of and under the seal of this Court, directed to the defendant, the Central Mine Equipment Company, its agents, officers, subsidiaries and those controlled by the defendant or acting under its authority, restraining them and each of them,

"(a) from making and selling or offering to sell and/or distributing cutting bits for use in plaintiff's combination having the general appearance of plaintiff's bits and as exemplified by figures 1, 2 and 3 in the drawing of said Letters Patent No. 1,677,950, by plaintiff's exhibits 3, 4, 7, 8, 10 and 14, and by the drawings of bits shown in exhibits O, Q and R, and any modifications thereof approaching, simulating or approximating the general appearance of the plaintiff's bits, and from using, appropriating and infringing, in any other manner or style, the plaintiff's rights in said secondary meaning.

"(b) from making and selling or offering to sell and/or distributing cutting bits bearing the longitudinal bands, or either of them, illustrated in said U. S. Registration Certificates No. 333,322 and No. 338,952, and any modifications or mutations thereof approaching, simulating or approximating said bands; and from using, appropriating and infringing, in any other manner or style the plaintiff's said trademarks.

All of whom are now and hereby enjoined, restrained and ordered to refrain from committing the foregoing acts."

Paragraph 11 of the decree provided that the plaintiff recover from the defendant the gains and profits which had accrued to the defendant from its infringement of plaintiff's trade-marks and defendant's unfair competition, together with the damages sustained by the plaintiff; "said actual damages so found to be increased threefold and assessed against the defendant in view of the willful, blatant and deliberate nature of the defendant's acts, * * *." Paragraph 12 referred the case to a master for an accounting of profits, gains and damages. Paragraph 13 ordered the defendant to destroy all labels, cartons and printed matter illustrating its accused cutting bits, and to junk or sell for scrap such bits in its possession or under its control. Costs of suit were assessed against the defendant. The court reserved jurisdiction to make further orders to effectuate its decree.

The defendant did not appeal from the decree. After the time to appeal had expired, the parties entered into a stipulation, which was filed January 19, 1943.

They agreed: (1) that the reference of the case to a master be set aside; (2) that a judgment for $7,000 be entered against the defendant in full satisfaction of paragraph 11 of the decree providing for the recovery by plaintiff of defendant's gains and profits and plaintiff's damages; (3) that paragraph 13 of the decree, relating to the destruction of accused bits, etc., in the possession of the defendant, having been complied with, be set aside; (4) that all costs of suit be assessed against the defendant; and (5) "That in all other respects, not herein otherwise provided for, the said decree of December 5, 1942, shall be and remain unchanged and shall have full force and effect as a final decree in this cause."

On the day the stipulation was filed (January 19, 1943), the District Court entered a supplemental decree amending the original decree in exact conformity with the stipulation.

■ The situation then was, in substance, as follows: The claim of the plaintiff for infringement of its patent was dismissed; the claims of the plaintiff for trade-mark infringement and unfair competition were sustained; the issue of damages and of the destruction of accused material was settled; the plaintiff was protected against future unfair competition by the defendant by para-

graph 10(a) of the original decree, and against infringement of plaintiff's trademarks by paragraph 10(b). The injunctive relief granted in paragraph 10 of the decree was not subject to impeachment in its application to the conditions existing at the time it was granted. United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999.

Notwithstanding the stipulation that, except as therein provided, the decree of December 5, 1942, should remain unchanged and should constitute the final decree in the case, the defendant on January 8, 1953, filed a motion for modification of the decree of December 5, 1942 (as amended January 19, 1943), "by vacating that portion of the injunction restraining Defendant from making, selling, offering to sell and/or distributing cutting bits having the general appearance exemplified by Figures 1, 2 and 3 in the drawing of Patent No. 1,677,-950."

In its motion the defendant asserted that since the date of the entry of the injunction there have been such changes in circumstances as to render the injunction inequitable and contrary to public policy; that the conduct of the plaintiff since the injunction was issued has, in legal effect, abrogated whatever secondary meaning had attached to the configuration of the cutting bits shown in the drawing of the patent in that the plaintiff has ceased to make and sell bits of that appearance and "now publicly proclaims that its bits are known by flat side bands on opposite sides of the bit"; that Patent No. 1,677,950 has expired; that every member of the public should be entitled to make and sell every element of the combination claimed in the patent, including the bits, and that the plaintiff, by the terms of the injunction, is enjoying an extension of its patent monopoly. The defendant filed affidavits in support of its motion, showing: (1) that the bit receiving cavity in the bit holder of plaintiff's cutting chain determines the shape of bits which will work therein; that, as a result, the general shape and appearance of bits usable in the bit holder of the plaintiff's cutting chain, as that holder is presently constructed, is necessarily the same as that of the bit shown in the drawing of Letters Patent No. 1,677,950; (2) that there is a demand in the mining industry for cutting bits adapted to fit the bit holders manufactured by plaintiff, and, as a result, the plaintiff has been able to obtain a higher price for its cutting bits than is warranted, and to obtain substantially higher profits than those of its competitors, and that the defendant can make and sell such bits at a substantially lower price than the current price charged by the plaintiff for its bits; (3) that the cutting bits being made and sold by plaintiff are shown in an advertising folder of the plaintiff which discloses no bit of exactly the same shape as that shown in the patent drawing.

The bit shown in the drawing of the patent "is rhomboidal in side view and in cross section is of a flat diamond shape." It is referred to in the record as being of a true or pure diamond shape. From the evidence adduced at the hearing on the defendant's motion, it appeared that the plaintiff started the manufacture of the so-called true diamond-shaped bit in 1926, that it continued the manufacture of that bit until 1941 or thereabouts, and that it started making bits with flat bands on the sides during 1935 and 1936.

We gather from the record that the accused bit made and sold by the defendant from December, 1937, until December 5, 1942, was a bit with side bands and was a slavish copy of a similar bit made and sold by the plaintiff; that the bit the defendant now proposes to make and sell, in competition with the plaintiff, is a bit of the true diamond shape, which has no side bands, but which will fit the bit holder of the plaintiff's cutting chain, and is the type of bit shown in the drawing of the plaintiff's expired patent, a type of bit which the plaintiff no longer makes and sells.

The problem with which the lower court was confronted was whether changes had occurred since the entry of its de-

cree that would reasonably require a modification of the injunction,—changes so important "that dangers, once substantial, have become attenuated to a shadow." United States v. Swift & Co., supra, at page 119 of 286 U.S., at page 464 of 52 S.Ct. The District Court first resolved the problem in favor of the plaintiff, and on June 22, 1953, denied the defendant's motion to modify the injunction, but, upon reconsideration, on September 30, 1953, granted the defendant's motion and modified the injunction by eliminating that portion of it which restrained the defendant from making and selling cutting bits having the general appearance of plaintiff's bits as exemplified by the drawing of the patent originally in suit. This modification of the injunction was supported by findings and conclusions determining that plaintiff had discontinued the manufacture and sale of bits of the so-called "pure diamond" or "true diamond" shape as shown in Patent No. 1,677,950; that that patent had expired and its subject matter was public property; and that "defendant, as a member of the public, is entitled to make, use and sell the same."

Since the District Court had originally determined that the plaintiff's patent did not cover its cutting bits and that the defendant had not infringed the plaintiff's patent rights, the expiration of the patent was clearly not a changed circumstance justifying the modification of so much of the decree as was intended to protect the plaintiff against a recurrence of defendant's "willful, blatant and deliberate" unfair competition.

■ The question then arises whether the discontinuance by the plaintiff of the making and marketing of cutting bits having the so-called "true or pure" diamond shape would justify the modification of the injunction. It is, perhaps, true that those skilled in the art of making cutting bits and familiar with plaintiff's commercial line of bits would know that a "true or pure" diamond-shaped bit was not one made by the plaintiff. However, it seems apparent that to an unskilled purchaser of bits to be used in connection with the plaintiff's cutting chain, all bits which were adapted to fit the bit holders of the chain would be virtually indistinguishable with respect to their origin because of comparatively slight differences in shape. Having the same general appearance, being designed for use in the plaintiff's cutting chain, and doing the same work in the same way, the cutting bits of the plaintiff and those the defendant proposes to make and sell reasonably may be regarded as equivalents. The so-called "true or pure" diamond-shaped bit, we think, is as susceptible of being used in unfair competition with the plaintiff as the cutting bits with side bands. That being so, we are of the opinion that the fact that the discontinuance by the plaintiff of the making of the true diamond-shaped bit, standing alone, was not a circumstance justifying the modification of the injunction.

Had the defendant shown that it proposed to make and sell bits so plainly marked to indicate their origin that purchasers would know them to be bits made by the defendant and could not mistake them for bits made by the plaintiff, a different situation would be presented. We go no further than to say that, upon the showing made by the defendant in support of its motion, it was not entitled to the modification prayed for and granted.

We do not question the power of a District Court to modify an injunction such as that in suit to meet significant changes in conditions not foreseeable at the time the injunction was granted. Any doubt as to that was put at rest by the Supreme Court in the case of United States v. Swift & Co., supra, at page 114 of 286 U. S., 52 S.Ct. 460. See, also, Coca-Cola Co. v. Standard Bottling Co., 10 Cir., 138 F.2d 788, 789, in which case, although a modification of a consent decree granting an injunction was affirmed, "The modified decree specifically provided that neither the trademark, name label, color scheme of the labels, appearance of the bottles, containers or advertising matter of appellee should be de-

ceptively similar to those of the appellant", at page 789 of 138 F.2d.

Our conclusion is that the order appealed from should be vacated, but without prejudice to the power of the District Court hereafter to modify its injunction if the defendant shall show that it can and will market the bits it proposes to make and sell in competition with the plaintiff so marked as to eliminate all danger of the deception of purchasers and the infringement of plaintiff's trade-mark rights. It is so ordered.