**CALIFORNIA PACKING CORPORATION, a corporation, Plaintiff,**

v.

**SUN–MAID RAISIN GROWERS OF CALIFORNIA, a corporation, Defendant.**
**No. C–104–M.**

United States District Court
S. D. California, N. D.
July 7, 1958.

See also, 81 F.2d 674, certiorari denied 298 U.S. 668, 56 S.Ct. 833, 80 L. Ed. 1391.

Pillsbury, Madison & Sutro, by George A. Sears, San Francisco, Cal., for plaintiff.

Boyken, Mohler & Wood, by Gordon Wood, San Francisco, Cal., for defendant.

YANKWICH, Chief Judge.

This is a motion by the defendant Sun-Maid Raisin Growers of California, to be referred to, at times, as Sun-Maid, to dissolve the injunction issued in this case on June 15, 1936, or, in the alternative, to join Sun-Kist Growers, Inc. as a party. The gist of the demand for relief is stated by the movant substantially in this manner:

The basis for the motion is the general power of the Equity Courts to relieve a person of the effect of an injunction if conditions have changed, and the direct provision of Subdivision (b)(5) of Rule 60 of the Federal Rules of Civil Procedure, 28 U.S.C.A. which authorizes the court to relieve a person from a final judgment when "it is no longer equitable that the judgment should have prospective application * * *".

I

The Prior Proceedings

A proper understanding of the motion requires an outline of the facts from which the litigation stemmed.

The action was begun on October 16, 1929, by a complaint filed by the plaintiff, California Packing Company, a corporation, seeking to restrain the defendant from using the trademark Sun-Maid on any products other than raisins or raisin products. The plaintiff was the owner of the trademark Sun-Kist. On June 15, 1915, an action had been instituted in the United States District Court for the Southern District of New York by plaintiff's predecessor, J. K. Armsby Co., against Ernest L. Heebner and Archibald C. Clark. In it, it was alleged that the J. K. Armsby Co. owned the trademark Sun-Kist, which was infringed by the trademark Sun-Maid used by the defendants. The action was settled by an agreement whereby plaintiff's predecessor granted to Sun-Maid the right to use Sun-Maid on raisins or raisin products only. In the instant suit, it was alleged that the plaintiff had acquired the right of the predecessor to the business then conducted by them, that of preparing and marketing foods and ingredients of foods and the good will, and that the trademark of the plaintiff's predecessor was included.

It was also alleged that the plaintiff's predecessor had used the trademark Sun-Kist from about 1903 to such an extent that, in the mind of the public, the word Sun-Kist became associated with their products, which included canned fruits, vegetables, jams, jellies and other products, and that the trademark was registered on various occasions to cover various products, beginning with the first registration on January 28, 1908, the last one being on October 10, 1916.

248

On November 8, 1916, the Armsby Company assigned to the plaintiff the right to use the trademark Sun-Kist. On March 10, 1917, an agreement was entered into between the then parties to the lawsuit. In consideration of the settlement of the controversy, the California Associated Raisin Company, defendant's predecessor, was given the right to use the name Sun-Maid on raisins and raisin products only. The California Associated Raisin Company changed its name on February 17, 1922, to Sun-Maid Raisin Growers.

In 1923, Sun-Maid Raisin Growers found itself in financial difficulties which led to the determination that it would have to liquidate its business and dispose of its assets. The defendant was organized for the purpose of taking over its raisin packing business. On August 1, 1923, a contract was entered into between the Sun-Maid Raisin Growers and the defendant by which, among other things, it agreed to transfer its raisin packing business and the good will, including the applicable trademarks. On June 3, 1924, Sun-Maid Raisin Growers was adjudged a bankrupt. In the bankruptcy proceedings, its assets, including the trademark Sun-Maid were transferred to the defendant in accordance with the Agreement of August 1, 1923. Of the effect of this contract, the Court of Appeals has said:

"The appellee [defendant here] claims that it had no knowledge of the agreement of March 10, 1917, and is not bound thereby, and that the agreements contained in that contract to be performed on behalf of its predecessor are covenants which do not run with the personal property assigned and are binding only on the parties to the contract. This contention overlooks the character of the trade-mark and the right to its use. The California Associated Raisin Company, under its own name, the Sun-Maid Raisin Growers, could not convey any right to the use of a trade-mark which it did not own, and that right had

been expressly limited by the agreement of March 10, 1917, wherein the parties had agreed to limit the use of that trade-mark to raisins and raisin products. Consequently, *the trustee in bankruptcy sold that right and no other*. By its agreement to refrain from using the trade-mark 'Sun-Maid' on any other than raisin products, it acquired the unquestioned right, so far as the parties here involved were concerned, *to the use of that trade-mark on raisin products*. The contract of settlement of the divers claims of the parties to the use of the trade-marks 'Sun-Maid' and 'Sun-Kist' *was based upon mutual concessions as to doubtful claims. The appellee has enjoyed the fruits of that contract ever since it was executed and has packed nearly $250,000,000 worth of raisin products under the trade-mark 'Sun-Maid'. The appellee having purchased the rights of one of the parties to the contract of March 10, 1917, cannot avoid the corresponding burden.*" California Packing Corporation v. Sun-Maid Raisin Growers, 9 Cir., 1936, 81 F.2d 674, 676–677. (Emphasis added.)

To continue with the allegations of the Complaint in the present case:

It was alleged that, on January 1, 1929, the defendants had, in violation of the Agreement, applied the word Sun-Maid to canned goods, canned fruits and vegetables and other products of the same class which had been preempted by plaintiff's predecessor under the trademark Sun-Kist, in violation of the Agreement of March 10, 1917, and that the similarity between the two trademarks was such as to create confusion as to the source and sponsorship of the goods.

The Complaint asked that the defendant be enjoined from using the trademark Sun-Maid otherwise than on packages containing raisins or raisin products or confections made wholly from raisins.

The Answer, which, in effect, admitted the existence of the contract, denied that

the defendant, at the time it acquired, in bankruptcy, the rights of its predecessor, knew of its existence, disputed the claimed confusing similarity between the two trademarks and pleaded laches.

In other respects, the Answer need not concern us because Judge Paul J. McCormick, in his judgment, found generally in favor of the defendant. His findings, dated March 12, 1934, were preceded by a published opinion, dated February 23, 1934, (California Packing Corp. v. Sun-Maid Raisin Growers of California, D.C.Cal.1934, 7 F.Supp. 497) which, in substance, while holding that the defendant did not know of the existence of the contract of March 10, 1917, ruled that it, nevertheless, was bound by it. However, he denied relief upon the ground of laches in failing to institute proceedings against Sun-Maid for the use of the trademark on other than raisin products. Certain findings and conclusions of law only are important because they are among the grounds urged for the present motion. They read:

*Finding 15:*

"The name 'Sun-Maid' both with and without the Sun-Maid girl picture, indicates and is understood to indicate in the grocery trade and to the public, that the goods to which it is applied come from the defendant."

*Finding 16:*

"Defendant in this case has not acted fraudulently and is not seeking to take advantage of complainant's reputation or the reputation of its 'Sun-Kist' goods. Defendant is acting in good faith and there is no confusing similarity between the two trade-marks in suit. The use by defendant of the trade-mark 'Sun-Maid' is not likely to, and does not, produce any confusion or mistake, or represent directly or indirectly that defendant's goods come from complainant."

Conclusions of Law 2 and 4 read:

"2. The word 'Sun-Maid' is not an infringement of 'Sun-Kist' when both are used on goods of the same descriptive properties.

4. Defendant has the right to use its 'Sun-Maid' trademark on and as applied, not only to raisin goods, but to non-raisin goods."

These conclusions were not carried over into the judgment. Absent a counterclaim for declaratory relief (28 U.S. C.A. §§ 2201, 2202) for the defendant as to the validity or infringement of its mark, the Complaint was ordered dismissed. The decree of dismissal dated March 26, 1934, after a brief preamble, consists of one short paragraph:

"Ordered, adjudged and decreed that the bill of complaint herein be and the same is hereby dismissed with costs to defendant * * *"

On appeal the Court of Appeals for the Ninth Circuit reversed the judgment. California Packing Corp. v. Sun-Maid Raisin Growers, 9 Cir., 1936, 81 F.2d 674. The opinion, in effect, held that Sun-Maid was bound by the contract of March 10, 1917. In a brief paragraph, the Court stated the problem:

"The primary question in the case is whether or not the appellee Sun-Maid Raisin Growers of California, is bound by the contract of March 10, 1917." At page 676.

The Court found that the contract was binding and that neither laches nor any other equity consideration stood in the way of enforcing it against Sun-Maid.

Upon the mandate of reversal reaching the Court below, apparently without any objection,—and indeed with the approval of the then attorneys for the defendant,— under the then Local Rule 44, a final decree was entered on June 15, 1936, granting an injunction as originally prayed for in the Complaint, enjoining Sun-Maid from using the trade-mark Sun-Maid otherwise than

"on packages containing raisins or on packages containing food products or confections made wholly or in part from raisins, provided that such injunction shall not enjoin or

restrain defendant from using its present corporate name."

No further proceedings were had until December 16, 1954, when the defendant filed a motion identical with the present motion to dissolve the injunction. It alleged, in substance, the same facts as are alleged in the present motion, that the plaintiff has abandoned the use of the trademark Sun-Kist and that it appears from a deposition of an officer of the plaintiff that they have no interest in continuing the injunction and generally that it would be inequitable to continue to enforce it prospectively. The matter was heard upon documentary evidence and a deposition, by Judge Peirson M. Hall, who, on the 20th day of January, 1956, entered an Order declining to rule on the merits, but directing the dismissal of the motion, for failure to comply with the requirement that a proceeding to affect a final judgment should be addressed, in the first instance, to the Circuit Court of Appeals which had ordered the judgment entered. An appeal from that Order was taken, and on January 16, 1957, the Court of Appeals dismissed the appeal as not being from a final order. Considering the proceeding before it as a request for permission to proceed in the District Court, they granted it. Sun-Maid Raisin Growers of California v. California Packing Corp., 9 Cir., 1957, 244 F.2d 895.

Before the Court now is the same motion on practically the same grounds with the added ground that the plaintiff has used the trademark Sun-Kist monopolistically and that, for that reason, the further enforcement of the injunction would be inequitable.

## II

### Alleged Invalidity of Contract as Monopolistic

In dealing with the validity of the contract, it is to be borne in mind that a contract valid at the time it was entered into cannot be invalidated by conditions developing at a later date. 17 C.J.S. Contracts § 22; McCracken v. Hayward, 1844, 2 How. 608, 611, 11 L.Ed. 397; Islais Company v. Matheson, 1935, 3 Cal.2d 657, 662–663, 45 P.2d 326; W. B. Worthen Co. ex rel. Board of Com'rs of Street Imp. Dist. No. 513 etc.

v. Kavanaugh, 1935, 295 U.S. 56, 60–61, 55 S.Ct. 555, 79 L.Ed. 1298; National Dairymen Ass'n, Inc., v. Dean Milk Co., 7 Cir., 1950, 183 F.2d 349, 354; United States v. Nebo Oil Co., 5 Cir., 1951, 190 F.2d 1003, 1009. The decision in this case is based upon a valid contract which stemmed from litigation relating to the Sun-Kist and Sun-Maid trademarks. The findings as to the absence of confusing similarity between the Sun-Kist and Sun-Maid trademarks contained in the original findings in the case were not transmuted into the decree finally entered in the case. For that decree was based solely upon the court's conclusion that the defendant's predecessor by contract had assumed the obligation to limit its use of the mark Sun-Maid to raisins or raisin products only, and that no reason existed, in equity, for relieving it from the obligation. Speaking more specifically of the contention that the contract of March 10, 1917, is monopolistic: The contract did not *then*, nor does it *now* create a monopoly in violation of the Sherman Anti-Trust Act. (15 U.S.C.A. § 1 et seq.) The present trend of the courts is not to consider control of a commodity in itself as constituting a monopolistic practice which goes counter to the Sherman Anti-Trust Act unless the control of the market is such that the public has no access to competitive commodities. The Supreme Court in United States v. E. I. Du Pont De Nemours & Co., 1956, 351 U.S. 377, 394, 76 S.Ct. 994, 1006, 100 L.Ed. 1264 stated the problem in this manner:

"* * * When a product is controlled by one interest, without substitutes available in the market, there is monopoly power. * * * But where there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist merely because the product said to be monopolized differs from others. If it were not so, only physically identical products would be a part of the market."

Even when the right to trade is limited, there is no anti-trust violation in an agreement unless it result in an unreasonable restraint. Restatement, Contracts, §§ 512–513; Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 485–486, 497, 60 S.Ct. 982, 84 L.Ed. 1311; Times Picayune Pub. Co. v. United States, 1953,

345 U.S. 594, 611, 73 S.Ct. 872, 97 L.Ed. 1277; Stearns v. Tinker & Rasor, 9 Cir., 1958, 252 F.2d 589; Klor's, Inc., v. Broadway-Hale Stores, Inc., 9 Cir., 1958, 255 F.2d 214. And see the writer's opinion in Martin v. Ford Alexander Corporation, D.C.Cal.1958, 160 F.Supp. 670, 686–687.

So, even if the agreement of March 10, 1917, had the effect of preventing Sun-Maid's predecessor, and consequently Sun-Maid, from engaging in the production and marketing of products other than raisins and raisin products, the monopolistic feature would not be a violation of law or public policy without an actual showing that there were no others in the field engaging in the production and sale of products competitive to those of the plaintiff. However, the agreement is much narrower. It *does not* prevent Sun-Maid from engaging in the production of canned products of fruits and vegetables other than raisin and raisin products. It merely *restricts* the use of the trademark Sun-Maid to such products. Sun-Maid's predecessor *was free*, and Sun-Maid itself *has been free* all these years, to can anything,— vegetables or fruits,—and *market them* under any name so long as that name is not Sun-Maid. The owner of a trademark has a property right which attaches to the mark so long as the mark is used in the conduct of a business, or in the sale of goods. 15 U.S.C.A. § 1051; 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 2; Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348, 352; Continental Distilling Sales Co. v. Brancato, 8 Cir., 1949, 173 F.2d 296, 298; Bulova Watch Co. v. Steele, 5 Cir., 1952, 194 F.2d 567, 569.

Generally, the owner of a trademark may assign or transfer the mark to others for use in conjunction with a business or product, even if a proper name is a part of the mark and the purchaser will be protected. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 171; Guth v. Guth Chocolate Co., 4 Cir., 1915, 224 F. 932, 934; Reddy Kilowatt, Inc., v. Mid-Carolina Electric Co-op., 4 Cir., 1957, 240 F.2d 282, 289. And see, 15 U.S.C.A. §§ 1052, 1127.

In the case before us, the plaintiff, since the issuance of the injunction, has sold its trademark Sun-Kist and the goodwill attached to it. This sale does not terminate its rights under the contract, so far as Sun-Maid Mark is concerned. During the negotiations for the sale of the mark, the existence of the injunction was considered as a part of the goodwill which was being transferred. Much is made of the fact that the contract of September 20, 1950, *does not* transfer the injunction. In a sense, a judgment is a contract. 49 C.J.S. Judgments § 6; Am.Jur., Judgments, § 7. As stated by the Supreme Court in Blount v. Windley, 1877, 95 U.S. 173, 176, 24 L.Ed. 424:

> "It is undoubtedly true, in some sense and for some purposes, that a judgment has been treated and considered as a contract; and we are not disposed to deny that the judgment in this case is evidence of a contract. But the judgment is only a contract because it is evidence of a debt or obligation on the part of defendant due to plaintiff. *The judgment itself presupposes, and is founded on, some antecedent obligation or contract, because it now has the sanction of the judicial determination of its validity and the amount by a court of law.* The essential nature and character of the contract remains unchanged." (Emphasis added.)

And it may well be assumed that, if a judgment granting injunctive relief is assignable, the courts would protect the assignee because the effect of an assignment absolute in form is "to vest the legal title" in the assignee. Spiller v. Atchison, T. & S. F. Ry. Co., 1920, 253 U.S. 117, 134, 40 S.Ct. 466, 473, 64 L.Ed. 810. But such an assignment is not necessary in order to continue to secure the benefits of the injunction. An assignor at common law had the sole right to protect

the assignee, by legal means, in the thing he assigned or in the rights ancillary to it. 6 C.J.S. Assignments § 124. Now the assignee has such right in his own name, as he is the real party in interest in the thing assigned. 6 C.J.S. Assignments § 125; California Code of Civil Procedure, § 367; Lucey Mfg. Corp. v. Morlan, 9 Cir., 1926, 14 F.2d 920; Curtin v. Kowalsky, 1904, 145 Cal. 431, 434–435, 78 P. 962; Cohn v. County Board of Supervisors, 1956, 135 Cal.App.2d 180, 184, 286 P.2d 836. Regardless of any provision in the contract, the plaintiff would be required, should its rights to the injunction be challenged, to defend them insofar as they affect the rights of the assignee. More important than the right to the use of the trademark Sun-Kist is the fact that through the contract Sun-Maid's predecessor bound itself to limit its use of the Sun-Maid trademark to raisins and raisin products. When the plaintiff's predecessor acquired the right not to have the Sun-Maid trademark used on other products, it also confirmed Sun-Maid's exclusive right to the use of the mark on raisins and raisin products. Indeed, the preamble to the Agreement states:

"Whereas, the party of the first part desires that its right to use the said trade-mark 'Sun-Maid' in connection with the packing and sale of raisins and food products or confections containing raisins shall be established as against said The J. K. Armsby Company, or its successors, or any one claiming through or under them, the right to use said trade-mark 'Sun-Kist', and to that end to procure the dismissal of said suit;"

There is added strength to this position when we consider that the Court of Customs and Patent Appeals, in a contest over the same trademark, held that, by reason of the contract Sun-Maid

"was restricted in its use of its mark 'Sun-Maid,' and may not assert ownership of the same as applied to the goods described in its pending application." California Packing Corp. v. Sun-Maid Raisin Growers, 1933, 64 F.2d 370, 376, 20 C.C.P.A., Patents, 968.

### III

### No Showing of Oppressive Effect Of Injunction

▆▆▆▆ Factually, the showing made by the affidavits, exhibits and depositions is insufficient to cause us to relieve Sun-Maid of its contractual obligations. A court of equity may, *in the light of changed conditions, relieve a person of the effect of an injunction.* However, courts will not do so unless the conditions have so altered as to change the judgment "into an instrument of wrong." United States v. Swift & Co., 1932, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999. In the case just cited, in which the phrase just quoted was used, a leading case on the subject, the Court said:

"There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction whether right or wrong, is not subject to impeachment in its application to the conditions that existed in its making. We are not at liberty to reverse under the guise of readjusting. Life is never static, and the passing of a decade has brought changes to the grocery business as it has to every other. The inquiry for us is whether the changes are so important that dangers once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent

of all concerned." 286 U.S. at page 119, 52 S.Ct. at page 464.

The Court of Appeals for the Ninth Circuit has applied this principle in Morse-Starrett Products Co. v. Steccone, 1953, 205 F.2d 244. The Court, after quoting the language of the Swift case, set out above, stated:

"In the instant case there has been no adequate showing either that changed conditions make continuation of the injunction inequitable or that operation of the injunction cannot have the intended effect. See Restatement, Torts, § 943, comment (e) (1939). The case upon which Mr. Steccone relies for the proposition that such a showing is unnecessary, Coca Cola Co. v. Standard Bottling Co., 10 Cir., 138 F.2d 788, does recognize that modification of a decree depends upon a showing of changed circumstances of sufficient importance to warrant such modification." 205 F.2d at page 248.

Significantly, in Footnote 5 of the opinion (at page 249), Judge Orr adverts to the statement of the Advisory Committee on the Amendments to the Rules, that Rule 60(b) of the Federal Rules of Civil Procedure does not assume

"to define substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief." (See, 28 U.S.C.A., Rule 60, p. 313)

See, Block v. Thousandfriend, 2 Cir.; 1948, 170 F.2d 428, 430; Elgin Nat. Watch Co. v. Barrett, 5 Cir., 1954, 213 F.2d 776, 780; Federal Deposit Insurance Corp. to Use of Secretary of Banking v. Alker, 3 Cir., 1956, 234 F.2d 113, 116 and Footnote 4.

■ In effect, this means that the rule referred to does not go beyond the principles which have obtained in Courts of Equity for granting relief from judgments. 49 C.J.S. Judgments §§ 341–342; 43 C.J.S. Injunctions § 237; 28 Am.Jur., Injunctions, § 323. And see, Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, 1941, 312 U.S. 287, 298, 61 S.Ct. 552, 85 L.Ed. 836; Cole v. Fairview Development, Inc., 9 Cir., 1955, 226 F.2d 175.

## IV

### The Compromise as the Basis For the Injunction

■ It is axiomatic that the settlement of a disputed claim is a good consideration for an agreement to compromise. 1 C.J.S. Accord and Satisfaction § 4, p. 475. The decree of the court entered after the reversal of the original decree made *no reference to the rights to the Sun-Kist trademark*. It read:

"It is further *ordered, adjudged* and *decreed* that an injunction issue herein perpetually enjoining and restraining the defendant, its agents and servants, and all claiming and holding through or under it, from using the trademark 'Sun-Maid' otherwise than on packages containing raisins or on packages containing food products or confections made wholly or in part from raisins, provided that such injunction shall not enjoin or restrain defendant from using its present corporate name."

■ Significantly, no new findings were made, and as the decree was approved by both sides, it may be assumed that, although the original findings disappeared with the reversal of the judgment in favor of the defendant, counsel for both parties *waived* new findings. So Sun-Maid cannot, at the present time, recapture the benefit of a finding of non-confusion which the Court of Appeals' decision set aside, and upon such finding base the argument that the plaintiff no longer being interested in the Sun-Kist label, they should be deprived of the benefit of the judgment.

■ The short answer to this contention is that the injunction merely *confirmed* rights with which Sun-Maid's predecessor had parted in 1917. In truth, the final injunction issued was based upon one ground only; namely, that Sun-Maid's predecessor *by contract* had

limited itself to using the Sun-Maid trademark on raisins and raisin products only. So that, in reality, Sun-Maid is seeking now to be relieved of a contract from which courts repeatedly have declined to relieve them in the past. The present use by plaintiff's assignee of Sunkist rather than Sun-Kist did not terminate the right of the plaintiff to the contract whereby the defendant's predecessor agreed to limit the use of its mark Sun-Maid to raisins and raisin products. The contract of 1917 contemplated that the benefits inure to the assignee of both parties, including the assignee of defendant's predecessor, and its successors, for that matter. The clause already quoted guaranteeing the rights of Sun-Maid indicates this with clarity.

During these years Sun-Maid has had and received great benefits from the exclusive use of the mark on raisins and raisin products. No one has challenged their right to such use. By the same token, the plaintiff, through its predecessor, has acquired the right to have the label *confined* to such products. Under the guise of modifying the injunction, the defendant, in reality, is seeking to be relieved of the burdens of the contract. The detriments of which they now complain flow not *from the injunction,* but from the *contract* their predecessor entered into, and by which they are bound. Even if the defendant's predecessor was wrong in settling the lawsuit, the defendant cannot be relieved of the contract by which it limited the use of its own trademark Sun-Maid to certain products in order to avoid litigating the possible infringement of the Sun-Kist mark.

The situation is thus akin to that wherein a person agreeing to pay for an idea which is not protected, will be held to his bargain notwithstanding the fact that, before disclosure, he could have used the idea without paying for it. Desny v. Wilder, 1956, 46 Cal.2d 715, 730, 299 P.2d 257.

This court, the Court of Customs and Patent Appeals and the Court of Appeals for the Ninth Circuit have held that the contract of 1917 was valid and binding on the defendant, although the defendant at the time it acquired the assets of its predecessor, California Associated Raisin Company, through bankruptcy, did not know of its existence.

In sum, the change of ownership in the trademark Sun-Kist and the acquisition of it and the good will by the Sun-Kist Growers, Inc. does not alter the situation or the rights flowing to the parties from the Agreement of March 10, 1917, and the injunction which limited Sun-Maid's use of the trademark to raisins and raisin products only.

Grant that a court of equity *may,* upon a clear showing of unforeseen and unanticipated conditions, modify an injunction. United States v. Swift & Co., 1932, 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999. Nevertheless, that right does not extend to rights fully accrued upon facts so nearly permanent as to be substantially impervious to it:

"A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change." United States v. Swift & Co., supra, 286 U.S. at page 114, 52 S.Ct. at page 462. California State courts have adopted and applied this principle. See Sontag Chain Stores Co. v. Superior Court, 1941, 18 Cal.2d 92, 94–96, 113 P.2d 689; Woods v. Corsey, 1948, 89 Cal.App.2d 105, 113–114, 200 P.2d 208.

Here, nothing has happened except a change in the ownership of the mark which had formed the basis of the lawsuit which preceded the Agreement of March 10, 1917. To repeat, the injunction merely confirmed it and nothing has been produced at this hearing to indicate that the injunction

"has been turned through changing circumstances into an instrument of wrong." United States v. Swift & Co., supra, 286 U.S. at page 115, 52 S.Ct. at page 462.

### Summary and Conclusion.

In summary, it appears that the movant here has based this motion upon grounds that are entirely irrelevant. It insists that, by reason of the fact that

the plaintiff has sold the trademark Sun-Kist and the buyer uses the form Sunkist, the defendant should no longer be bound by the injunction which prohibited it from using the trademark Sun-Maid on products other than raisins and raisin products.

The argument is a *non sequitur*. It presupposes that the original decree was grounded upon the ownership by the plaintiff of the hyphenated trademark Sun-Kist. This was not the case. The original litigation in New York between the parties *was* based on contentions relating to this mark and its infringement. But the *decree in the present case* was issued solely because the parties *compromised* a lawsuit, in which the conflicting claims were doubtful and which the courts found to be binding upon them and the defendant, as their successor, regardless of the merits or demerits of the lawsuit.

So the vacated finding to the effect that there was no confusing similarity between the marks Sun-Maid and Sun-Kist and the alleged subsequent abandonment by the plaintiff of the use of the mark Sun-Kist, for an unhyphenated Sunkist, lose all significance. They are not the type of changed conditions for which relief is granted from the effects of a judgment.

On the contrary, *it would be inequitable,* at the present time, when no other conditions exist, to relieve the defendant of the binding effect of its predecessor's contract.[1]

---

[1] There is nothing in Coca-Cola Co. v. Standard Bottling Co., 10 Cir., 1943, 138 F.2d 788, 789, relied on by Sun-Maid, which goes counter to this conclusion. There, an injunction had been issued enjoining the defendant from

> "selling any product under the names Cherry and Cola, Ayer's Cola, Standard Cola, or any like word, name or names, or words, that are colorable imitations of the trademark 'Coca Cola'; (f) selling any product other than genuine Coca Cola upon calls of 'coke'."

Later, the Court held that the Coca Cola Company was not entitled to the exclusive use of the word "cola". In the circumstances, the right to the trademark having been limited by court action, the Court found it inequitable to continue an injunction which deprived the defendant of the right to use, on soft drinks, the word "cola" in conjunction with words other than "coca" in the combination "Coca Cola" which was the defendant's trademark. This is not the situation here. While the plaintiff has, since the injunction was issued, assigned its trademark Sun-Kist, *neither it nor its successor in interest has abandoned it.* But, even if they had, the defendant is still bound by the contract which its predecessor entered into in 1917 limiting the use of its own trademark Sun-Maid to raisins and raisin products, and retaining the exclusive right in that field. In Morse-Starett Products Co. v. Steccone, 9 Cir., 1953, 205 F.2d 244, 249, and in Bowdil Co. v. Central Mine Equipment Co., 8 Cir., 1954, 216 F.2d 156, 160–161, the scope of Coca-Cola Co. v. Standard Bottling Co., supra, is limited as herein indicated. Indeed, in the Bowdil case, an Order modifying the original injunction, *which was based upon a stipulated agreement,* was reversed because the Court of Appeals concluded that the showing that the

> "discontinuance by the plaintiff of the making of true diamond-shaped bit, standing alone, was not a circumstance justifying the modification of the injunction." 216 F.2d at page 160. (Emphasis added)

So, here, the sale of the mark does not end Sun-Maid's obligations embodied in the contract of settlement which was carried over into the decree.

And we may disregard entirely the fact that it stemmed from the settlement of a lawsuit involving the alleged infringement of the plaintiff's trademark Sun-Kist. For, if the plaintiff's predecessor, without possessing any mark of its own, had, for adequate consideration, entered into an agreement with the defendant's predecessor in which they agreed *not to use* Sun-Maid on any product other than raisins and raisin products, the contract would be just as effective. And the sale of its business to others would not deprive the plaintiff of the right *not to have* the defendant use its mark on competitive products. See, Hamilton, Brown Shoe Co. v. Sam B. Wolf Sons Co., 1930, 39 F.2d 272, 273–274, 17 C.C.P.A., Patents, 921; R. M. Hollingshead Corp. v. Davies-Young Soap Co., 1941, 121 F.2d 500, 504, 505, 28 C.C.P.A., Patents, 1286.

Nor would it be fair to substitute a new party-plaintiff,—Sun-Kist Growers, Inc.,—which was not a party to the original litigation, and relitigate a judgment which has been final for over twenty years.

In truth, there is nothing left to litigate.

Hence the following rulings:

1. The Motion to Dissolve the Injunction issued on June 15, 1936 is denied.

2. The Motion to Join Sun-Kist Growers, Inc., as a party is denied.

Formal findings and Order to be prepared by counsel for the plaintiff under Local Rule 7, West's Ann. Code. Costs to the plaintiff.

We repeat: Sun-Maid may pack and sell, if it wishes to, *all the varieties of orange, lemon, grape and other products, as exemplified by the twenty-one exhibits introduced at the hearing,* as there is nothing in the contract or in

the injunction which prevents it from expanding its activities into packing and selling such products. *All it is forbidden to do,* as a result of its predecessor's act, *is to use* the Sun-Maid label on them.