The **CLOROX COMPANY**, Plaintiff,

v.

**STERLING WINTHROP, INC.,
and Reckitt & Colman,
Inc., Defendants.**

No. CV92–0386–R.

United States District Court,
E.D. New York.

July 31, 1996.

Kim J. Landsman, Patterson, Belknap, Webb & Tyler, New York City, for Plaintiff.

Paul Curnin, Simpson Thacher & Bartlett, New York City, for Defendants.

## AMENDED OPINION AND ORDER

REAL, District Judge.

Defendants STERLING WINTHROP, INC. (STERLING) and RECKITT & COLMAN, INC. (RECKITT), the owners of the LYSOL trademark, move for summary judgment of this 4 year old dispute with THE CLOROX COMPANY (CLOROX), the owner of the PINE–SOL mark, in which CLOROX claims an agreement with RECKITT over the use of the PINE–SOL mark is a violation of the antitrust laws (Section 1 & 2 Sherman Act) as a restraint on competition in the household cleaning product market.

After litigation resulting in three settlement agreements negotiated by competent counsel and parties of comparable economic strength, a detailed agreement of permitted use of the PINE–SOL mark was reached.

This case, when stripped of all the antitrust rhetoric by counsel for CLOROX, is simply an attempt to undo the permission granted by RECKITT'S predecessor in interest evolving to CLOROX to use the PINE–SOL mark in the household cleaning product market.

To accomplish an undoing of the agreement of 1987 CLOROX strains to engage the help of the antitrust laws. For the reasons set forth herein the motion for summary judgment is GRANTED.

## FACTS

The dispute has its genesis in the United States Patent & Trademark Office (PTO) in 1952 when MAGNOLIA CHEMICAL CO. (MAGNOLIA) applied for trademark registration of the PINE–SOL mark for a liquid general household cleaner, disinfectant and deodorant. That matter was contested by LEHN & FINK PRODUCTS CORP. (L & F), the owner of the then validly registered LYSOL trademark being used by L & F in the distribution and sale of its LYSOL disinfectant products. The PTO determined that the PINE–SOL mark as presented could be confused with the senior LYSOL trademark and denied registration of the PINE–SOL mark. Armed with the determination of the PTO L & F brought suit against MAGNOLIA, the owner of the PINE–SOL, to enjoin use of the PINE–SOL mark in the household cleaner market. That litigation resulted in a settlement agreement giving MAGNOLIA permission to use the infringing PINE–SOL mark in certain defined applications in the household cleaner market. That agreement puts no limitation on the owner of the PINE–SOL mark to compete with the owner of the LYSOL trademark or generally in any area of household cleaning products, including disinfectants, so long as the PINE–SOL mark was not used except as permitted by the agreement. The agreement was addressed only to the use of the PINE–SOL mark on household cleaning products.

The 1952 agreement was superseded by agreements in 1967 and 1987 each resulting from settlement of litigation involving the permitted uses of the PINE–SOL mark. In each of the 1967 or 1987 agreements there

was and is no prohibition on the owner of the PINE–SOL mark to compete in the household cleaning products with LYSOL, including disinfectant products, with any mark other than PINE–SOL as limited by the agreements.

The 1987 agreement provides that CLOROX may use the PINE–SOL mark without limitation on any product so long as it is not advertised as a disinfectant and may market any product as a disinfectant with the endorsement "From PINE–SOL" or "From the Makers of PINE–SOL." Up to the time of this litigation CLOROX has not chosen to utilize that option.

Moreover, CLOROX is free to market any other product under any other trademark without limitation. CLOROX has in fact marketed Formula 409, Tilex, Soft Scrub, Clorox Clean Up and Clorox Toilet Bowl Cleaner in direct competition with LYSOL products. All of these CLOROX products have enjoyed remarkable success. *See California Packing Corp. v. Sun–Maid Raisin Growers*, 165 F.Supp. 245 (S.D.Cal.1958), aff'd, 273 F.2d 282 (9th Cir.1959).

For a complete background of this litigation *see Clorox Co. v. Sterling Winthrop*, 836 F.Supp. 983, 985 (E.D.N.Y.1993).

## DISCUSSION

CLOROX has totally misconstrued the nature of this case in attempting to squeeze the square trademark peg into the round antitrust hole. From the beginning of the first litigation between L & F (Reckitt predecessor) and MAGNOLIA (a CLOROX predecessor) the matter has been one of use of a trademark. There has been no competitive limitation on the owner of the PINE–SOL market; no price fixing; no division of markets territorial or product; no group boycott; or concerted refusals to deal with a competitor. The agreements uniformly express a desire of the parties to protect the use of the LYSOL trademark and PINE–SOL mark. CLOROX attempts to confuse the matter by largely ignoring who the competitors are in the market place. The competitors in the household cleaning product market are CLOROX and RECKITT, not PINE–SOL and LYSOL. Trademarks are

only an exclusive right to use a trademark as identification of the product using the trademark to the exclusion of all others of the same or confusing trademarks. The PTO effectively granted that exclusionary power in this matter to RECKITT when the Patent Office Examiner in Chief affirmed the decision of the Examiner of Trade Mark Interferences. 96 PSPQ 57 (1953). At that time L & F was empowered to lay to eternal rest the PINE–SOL mark without the luxury of a eulogy. After litigation commenced by L & F to execute the ruling of the PTO, the parties, L & F and MAGNOLIA [succeeded by MILNER PRODUCTS CO. (MILNER)], chose to use the alternative to a judgment by settlement agreement. L & F gave MILNER the ability to use the PINE–SOL mark in marketing a dilutable liquid cleaner with certain restrictions on the products formula and labeling. At that time MILNER, CLOROX'S predecessor, chose to consider the ruling of the PTO valid without the necessity of review, by a court, of the validity of the PTO's findings in the 1952 interference proceedings. Although CLOROX eschews the term license for what the 1956 agreement created, it is hardly without dispute that what L & F granted to MILNER was a limited license. With this limited license the PINE–SOL product has flourished competitively in the household cleaner market. The result of the 1956 agreement and its progeny is pro-competitive simply because there has been no dilution of competition by CLOROX in any manner and PINE–SOL has been permitted an opportunity in the market place. The agreement is neither violative of Section 2 of the antitrust laws nor an unreasonable protection of the LYSOL trademark under the trademark laws.

The 1967 agreement was the result of a settlement in litigation where STERLING now the owners of the LYSOL trademark and AMERICAN CYANAMID (CYANAMID) locked horns in a dispute over the marketing of a PINE–SOL disinfectant spray. The parties in this litigation—no midgets in the market place—again agreed that the decision of the PTO was correct and again chose to forego the risk of a court judgment.

Turning the tables CYANAMID sued STERLING in 1983. In 1986 both parties still in litigation over use of the PINE–SOL mark STERLING then sued CYANAMID for breach of the 1967 agreement. Both these actions were resolved in 1987, again affirming the parties belief in the validity of the PTO's ruling and foregoing a court ruling. After 4 years of intense litigation the parties in an attempt to avert any further disagreements spelled out with particularity what the obligations of the parties were under the 1956 and 1967 agreements. In considering the 1987 agreement vel non Judge Dearie of this Court concluded "it is not per se illegal. A product of arm's length negotiations after a period of years, the Agreement limits the uses of the PINE–SOL mark in an apparent effort to insure co-existence between senior and junior marks." *Clorox*, supra, at page 989. In 1990 CLOROX acquired the PINE–SOL mark to add to its stable of household cleaning products. Almost immediately CLOROX attempted to find a way to abrogate the 1987 agreement. In 1991 CLOROX launched a national advertising program that promoted PINE–SOL primarily as a disinfectant. Sterling brought suit in the New Jersey Superior Court seeking to enjoin the advertising. CLOROX in defense charged STERLING with violation of Section 1 and 2 of the Sherman Act. Rejecting CLOROX'S antitrust argument the New Jersey Superior Court granted STERLING an injunction, saying about the antitrust charges:

> [I]t is unlikely that [CLOROX] will be able to prove that an agreement which merely provides for emphasis in advertising could be a violation of any antitrust laws. There is no price fixing or division of markets or the like.... The 1967 agreement was an arm's length agreement between two large companies, no fraud or other equitable defenses are alleged.... The public will be told the truth about PINE–SOL [a]s long as the cleaning properties are emphasized over the disinfectant properties. Also the public interest is furthered by the settlement of litigation and enforcement of fair agreements.

CLOROX stretching for an antitrust hook makes a generic argument that misuse of a trademark can be a violation of the antitrust law citing *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951), and Judge Edward Weinfeld's ruling in *United States v. Bayer Co.*, 135 F.Supp. 65, 70–71 (S.D.N.Y.1955). The citations for the generic principal of trademarks in antitrust law is indisputable but the agreements in *Timken*, supra, and *Bayer*, supra, bear no resemblance to the agreement being considered here. In both those cases there was a direct division of markets *Timken*, supra, bearings and *Bayer*, supra, in pharmaceuticals. The lack of justification of a trademark licensing system is very succinctly stated by Justice Black in *Timken*, supra, when he wrote at page 598, 71 S.Ct. at 974–75:

> Nor can the restraints of trade be justified as reasonable steps taken to implement a valid trademark licensing system, even if we assume with appellant [Timken] that it is the owner of the trademark "Timken" in the trade areas allocated to the British and French corporations. Appellant's premise that the trade restraints are only incidental to the trademark contracts is refuted by the District Court's finding that the *"trademark provisions [in the agreement] were subsidiary and secondary to the central purpose of allocating trade territory"* (emphasis added).

Likewise Judge Weinfeld using the *Timken* case, supra, in a footnote to dispose of a trademark issue in an agreement where "[T]he substance of *the agreement deals with (1) a world wide division of the pharmaceutical market with specific areas allocated to Bayer and I.G. Farben and the exploitation of the remaining areas by a newly formed corporation in which Bayer and I.G. Farben were to have specific interests;* (2) transfer or recognition of trademarks, including future trademarks, including future trademarks in certain areas, in favor of the party to whom an area was allocated; ..." (emphasis added). *Bayer*, supra, at p. 68. Judge Weinfeld described this as "[T]he allocation of the world markets of the defined pharmaceutical products amongst Bayer, I.G. Farben and Bayer Products Limited *is so all pervasive* as to constitute a per se violation

of § 1 of the Sherman Act". *Bayer,* supra, at p. 70 (emphasis added). That puts the agreement here providing only for the use of an infringing trademark 180° apart from *Timken,* supra, and *Bayer,* supra. CLOROX, the competitor, is in no way limited to entry or participation in any household cleaning product market. The string citations in the brief of CLOROX at footnote 8 add nothing to the misuse argument of CLOROX.

CLOROX attempts to put the agreement of MAGNOLIA and MILNER in 1956 and CYANAMID in 1968 and 1987 in an antitrust posture of in pari delicto. STERLING argues not in pari delicto but rather an equitable estoppel based on the agreements of CLOROX'S predecessor as to the correctness of the PTO'S 1952 decision with the opportunity in 1956, 1968 and 1987 to challenge that decision on the trademark issue by court determination should now preclude CLOROX from attacking the finding of the infringing character of PINE–SOL. The court agrees that to permit CLOROX to now "contest" the ruling of the PTO would be permitting CLOROX an unfair advantage and negate the desirability of concluding litigation by settlement between the parties in the public interest.

CLOROX claims that ¶ 4(c) of the 1987 agreement unreasonably restrains trade because it restricts how the words cleans, cleaner, disinfectant or disinfects are used. No jury could reasonably conclude those restrictions set forth in ¶ 4(c) in an attempt to preclude further litigation between the parties restrains CLOROX in any fashion in the competition of its products in the marketplace.

CLOROX argues that the agreement is a horizontal restraint on the output of household cleaning and disinfecting products. Nothing could be farther from the truth. CLOROX is free to put any home cleaning product into the marketplace. It in no way limits CLOROX in putting before the public any product it desires. The limitation, if any, of this agreement is only how the infringing mark PINE–SOL can be presented to the public. That limitation does not add up to a "horizontal restraint" in violation of the Sherman Act.

CLOROX claims that the agreement makes it more difficult for it to compete. That concern is one for consideration of the vehicle for competition, not one for antitrust consideration. As Judge Dearie quotes from *Capital Imaging Associates v. Mohawk Valley Medical Associates,* 996 F.2d 537 (2d Cir.1993) in *Clorox v. Winthrop,* 836 F.Supp. 983, 989 (E.D.N.Y.1993):

> "under this [rule of reason] test plaintiff bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Capital Imaging Associates,* 996 F.2d at 543. This rule reflects the principle that antitrust laws exist for "the protection of competition, not competitors." *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962).

CLOROX has failed to show any adverse effects on competition in the household cleaning products market. Their desire to fulfill what from the record appears to be their intent to piggy-back the PINE–SOL mark by extension of the PINE–SOL mark into new products does not make this an antitrust case. Since CLOROX, the competitor, is now in the market with adequate power to compete with all comers in the cleaning products market with the myriad of marks it now owns or would acquire or could conceive of creating, its position on antitrust violation is belied totally by its success with both its present cleaning and disinfectant products.

## JUDGE DEARIE'S OPINION

CLOROX claims that JUDGE DEARIE'S opinion reported at 836 F.Supp. 983 (E.D.N.Y.1993), precludes summary judgment at this time. Contrary to CLOROX'S claim neither the law nor Judge Dearie's decision itself requires the application of the law of the case principle with reference to a renewed motion for summary judgment where as Judge Dearie states, "[N]o discovery has taken place in this action and very limited discovery took place in the state action before the stay." *Clorox,* supra, at p.

988. That was in 1993. Since then, even giving CLOROX the benefit of the doubt of a stay of discovery, CLOROX has done very little to accomplish what it claimed was necessary before Judge Dearie.

Judge Dearie, applying the rule of reason to the agreements, correctly found the evidence before him at that time—although only for "the purposes of this motion"—did not show a per se violation of the anti-trust laws. CLOROX did not then nor has it now shown that the agreements have "had an *actual* adverse effect on competition." *See Clorox,* 836 F.Supp. at 989. The evidence that has been presented in the present motion clearly shows that CLOROX'S competition in the household cleaning products market has not been adversely affected in any manner. It is both vigorous and successful. Nor have the agreements been shown to unreasonably restrain any competitive market in which CLOROX has the power to compete successfully. If there is any reach of the antitrust laws to these agreements regulating the use of a trademark that has been found by the PTO to create confusion, CLOROX has not shown it. Judge Dearie's opinion gave CLOROX its road map for discovery. CLOROX has eschewed to take the trip. Although the parties claim that more than 1 million documents have been exchanged, CLOROX, has not given the court anything but 5 or 6 documents that do not in any manner go to anti-competitive conduct by STERLING. Repeated reference to these few documents does not create a triable issue of material fact.

The agreements are clear that they are intended to protect the LYSOL trademark as applied to LYSOL disinfectant products. What the agreements have done by delineation of the use of the PINE–SOL mark is to avoid confusion. That success does not change the reasonableness of the agreements to accomplish just that purpose. CLOROX'S experts and studies do not address the possibility of confusion if the PINE–SOL mark was used on *disinfectant products.* Neither does CLOROX show any evidence of anti-competitive intent. *United States v. Eastman Kodak Co.,* 63 F.3d 95 (2d Cir.1995), and *United States v. Western Electric Co.,*

*Inc.,* 46 F.3d 1198, 1207 (D.C.Cir.1995), cited by CLOROX do not address agreements concerning the *use* of a trademark without anti-trust baggage.

### MONOPOLY

CLOROX'S claim of violation of Section 2 of the Sherman Act fares no better in a showing of monopolistic intent. There is no evidence or suggestion of available evidence that LYSOL'S position in the disinfectant market is anything more or less than the permitted market's acceptance of LYSOL as "growth or development as the consequence of a superior product, business acumen, or historic accident". *United States v. Grinnell Corp.,* 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966). Even if STERLING'S market position in the limited disinfectant market can be said to be sufficient to create a monopoly CLOROX has pointed to no evidence of STERLING'S use of any anti-competitive practice to maintain its market position. The absence of any admissible evidence on the part of CLOROX makes the Section 2 of the Sherman Act claim subject to summary judgment disposition pursuant to *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The time has come to inter this litigation with dignity. For the reasons set forth herein and in the interest of saving the trees and saving the enormous costs that this litigation spawns:

IT IS ORDERED the motion for summary judgment of STERLING is GRANTED.

Counsel to settle the judgment.