COURT OF APPEALS OF THE NAVAJO NATION

May 2, 1983

GENERAL ELECTRIC CREDIT CORP., Appellant,

·vs.

· Raymond BECENTI, Appellee.

Appeal heard October 5, 1982 before Chief Justice Nelson J. McCabe and Associate Justices Homer Bluehouse and Tom Tso.

Thomas J. Hynes Esq., Hynes, Eastburn & Hale, of Farmington, New Mexico for the Appellant, and Michael Taylor-Shaut, · Esq., Wayne H. Bladh, Esq., and Michael C. Nelson, Esq., DNA-People's Legal Services, Inc., for the Appellee.

The situation before the court is a common one to the field of consumer law. A consumer purchases something under a retail installment contract, something goes wrong, there is an action to repossess the article, and the consumer defends using consumer protection laws. This of course requires the court to interpret the applicable statutes which provide modern consumer protection. In this case the court is called upon to apply and construe New Mexico consumer protection statutes, which is required by our 7 NTC Sec. 204(c).

In this case the appellee (the consumer) decided to buy a mobile home from A-1 Mobile Homes, Inc. Apparently he did not have the full down payment for the mobile home, so he made an arrangement to give A-1 a partial down payment and pay the remainder at the time of the delivery of the mobile home. When the first part of the down payment was made a form retail installment contract was signed, and the consumer says he had to sign it a second time and did not receive a copy until the mobile home was delivered.

The heart of this case is the sufficiency of the retail installment contract. The consumer defended against a repossession action on the basis that the contract did not have the information required by law. He says required items of information were missing including:

1.   The signature of the seller;
2.   The date of the expiration of the insurance;
3.   The buyer's address;
4.   The date installment payments were to begin;
5.   The amount of the final installment;

6. The date of the contract was signed; and
7. A description of purchased insurance.

NMSA Sec. 58-19-7A(3) clearly requires delivery of a copy of the contract to the buyer, and it must be a true copy. For the purpose of determining whether or not the requirements of Sec. 58-19-7 have been complied with, the court will refer to the buyer's copy, since it is a carbon copy of the original and reflects the state of the statutory disclosures at the time of the transaction.

Looking at the contract copy labelled "DUPLICATE - For Buyer" in the district court file, we note the following problems:

1. There is no seller's signature to assure the buyer the document is binding upon it;

2. There is no expiration date shown for the fire, theft and combined additional coverage so the consumer can protect himself in case of lapse and to see what he is paying for;

3. The buyer's address is not filled in. (This may not be material, but it could raise questions of jurisdiction and venue with regard to enforcing the contract);

4. While it may not be material under the contract that there is no date specified for the installment payments to begin, since the contract is not dated the clause that makes them being one month after the contract date is inoperative. Strictly speaking, the installment payments would begin at the consumer's option;

5. No final installment amount is shown, so the consumer does not know whether it is the same as the others or there is a surprise balloon payment; and

6. The contract is undated; NMSA Sec. 58-19-7 requires the signatures of the parties, completion of the contract as to all essential provisions, the residence of the buyer, and the absence of blank spaces. Therefore it appears to the court that this particular retail installment contract violated the statute, and the district court was correct in its finding that such was the case.

Next comes the problem of what can be done about the fact the statute was not complied with. NMSA Sec. 58-19-11B provides that should there be a "willful violation" of Sec. 58-19-7, that conduct "shall bar recovery of the finance charge, delinquency and collection or other charges whatsoever by the owner or holder of the retail installment contract."

The parties have provided a good deal of argument and presented precident to define the word "willful." It is conceded that the contract does not comply with the statute, and only a categorization of the seller's conduct as "willful" will bring the penalties into play.

We choose to define the term in commercial and consumer law context because what the court is being called upon to do is construe a state consumer statute. In doing so we are attempting to find the intention of the New Mexico Legislature when it passed the statutes we are dealing with, and surely when the legislators enacted the Motor Vechile Sales Finance Act of 1978 it was thinking of business conduct by sellers of motor vehicles which could be called "willful."

Unfortunately there appear to be no readily-available precidents in the consumer statute context to guide the court in applying the term "willful" to the situation here. The appellant provided the court with one useful precident in the case of Mercado v. Brennan, which stated:

"Willfullness in violating a regulatory statute implies not so much malevolent design as action with knowledge that one's acts are prescribed or with careless disregard for their lawfulness or unlawfulness. 173 F.2d 554, 555 (1949) (Price ceiling violation).

Another price control case brought us the definition that

". . . the term 'willfull' means intentional, knowing, voluntary, or deliberate, as distinguished from accidental involuntary, or unintentional." Haber v. Garthly, 67 F.Supp. 774, 776 (D. Penn. 1946).

A modern "price freeze" case gives us the definition that

". . . the term "willfully" cannotes conduct purposely done by one '"who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements'" United States v. Futura, Inc., 339 F. Supp. 162, 168 (D. Fla. 1972).

Condensing these elements, which have been derived from regulatory statutes much like the ones before us, we can eliminate bad or evil purposes or acts from our consideration. What the New Mexico Legislature intended was to set down standards to regulate the sale of motor vehicles which are financed. It intended that the covered dealers know what they were to do in connection with retail finance contracts and punish conduct where there are knowing violations of the act or a carless disregard for the act. Surely it meant to punish violations of the act which are intentional, knowing or voluntarily as well as dealer conduct which is plainly indifferent to the requirements of the act.

What is to be drawn from this is that courts will not impose that statutory penalty for mistakes, oversights or technical violations of the act. However the courts will penalize conduct which is clearly violative of the act.

In this case the seller complains that its conduct was reasonable under the circumstances and therefore not willful. First of all, the court takes notice that A-1 Mobile Homes, Inc. is a merchant of no small repute. Secondly, the court knows that successful business can operate in this day and age only through a complete knowledge of the laws under which they must operate. Third, the court is aware that there are many sources of information for businesses on what their legal requirements are. Therefore the court concludes that A-1 had knowledge of the law.

A-1 also had knowledge of what is required of it through the use of a standard, printed retail installment contract and disclosure form. The one in the court file is a standardized form, identified as being form DL-29-1T (10-73), suitable for use in the States of Montana, Nebraska and New Mexico. The blanks were there on the form to be used, and we note the standard rule of contractual interpretation that form contracts are to be construed against the person providing them.

We construe this contract as providing the merchant with knowledge of what disclosures were required, and we have seen the violations complained of on the very form furnished the consumer.

The conduct of the seller is not excusable and certainly there is no explanation for it. If there was to be a special arrangement on the sale, that is what pre-sale or other special agreements are for. The seller simply did not comply with the law, either by giving specific disclosures or by completing its own form. The form itself is evidence of willfulness due to the patent knowledge of the statutory requirements and the obvious disregard or indifference to them.

We further find that the district court's application of the penalty statute was correct because it declares the rights of the consumer to the noncollection of the finance charges.

There is still an adequate repossession remedy for the appellate because of the fact the district court order provides for the full payment of the principle price of the mobile home.

The decision of the district court was correct, and for that reason it is AFFIRMED.